## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAYMOND SKELTON on behalf of himself and all similarly situated persons, | |
| *Plaintiffs,* | Hon. Renee Marie Bumb |
| | Magistrate Judge: Karen M. Williams |
| v. | |
| NEW JERSEY DEPARTMENT OF CORRECTIONS, et. al. | Case No. 1:19-cv-18597-RMB-KMW |
| *Defendants.* | |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

NOW COMES Plaintiffs, by and through their attorney, EXCOLO LAW, PLLC, and file their response in opposition to Defendant's Motion to Dismiss. For the reasons stated in the attached brief, Plaintiffs respectfully requests this Honorable Court deny Defendant's Motion.

Respectfully Submitted,

EXCOLO LAW, PLLC

Dated: March 23, 2020

/s/ Solomon M. Radner
Solomon M. Radner (283502018)
Keith Altman (*p.h.v.*)
Attorney for Plaintiffs
26700 Lahser Road, Suite 401
Southfield, MI 48033
(866) 939-2656
sradner@excololaw.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAYMOND SKELTON on behalf of himself and all similarly situated persons, | |
| *Plaintiffs*, | Hon. Renee Marie Bumb |
| v. | Magistrate Judge: Karen M. Williams |
| NEW JERSEY DEPARTMENT OF CORRECTIONS, et. al. | Case No. 1:19-cv-18597-RMB-KMW |
| *Defendants*. | |

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

STATEMENT OF FACTS ......................................................................................2

STANDARD OF REVIEW .....................................................................................4

ARGUMENT ...........................................................................................................6

    I.   PLAINTIFFS' COMPLAINT SHOULD NOT BE DISMISSED BECAUSE THE COMPLAINT ADEQUATELY STATES A CLAIM AND THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.............6

        A.   Eighth Amendment Claim ...................................................................6

        B.   Supervisory Liability .......................................................................12

        C.   Qualified Immunity..........................................................................14

    II.  DEFENDANTS CONSPIRED TO VIOLATE PLAINTIFFS' CONSTITUTIONAL RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT....................................................................................................17

    III.   PLAINTIFFS' COMPLAINT STATES A CLAIM UNDER THE AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT..17

    IV.   PLAINTIFFS' CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF EXTEND AS FAR AS NECESSARY TO REMEDY THE DEFENDANTS' VIOLATIONS..........................................................................19

    V.  PLAINTIFFS' CLAIMS AGAINST THE STATE ARE FOR INJUNCTIVE RELIEF AND CLAIMS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITY ARE FOR MONETARY DAMAGES. ..................19

   CONCLUSION.................................................................................................20

# TABLE OF AUTHORITIES

Cases

*Andersen v. Creighton*, 483 U.S. 635, 640 (1987) ...................................................15

*Anela v. City of Wildwood*, 790 F.2d 1063, 1069 (3d Cir.1986) .............................13

*Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 72 (3d Cir. 2011) .................................................................................................................................13

*Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009)..............................................5

*Baker v. Monroe Township*, 50 F.3d 1186, 1191 n. 3 (3d Cir. 1995)....................13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)........................................4, 5

*Berry v. Brady*, 192 F.3d 504, 507 (5th Cir.1999).....................................................7

*Bowers v. City of Phila.*, Civ. No. 06–3229, 2008 WL 5210256, *6 (E.D.Pa. Dec.12, 2008) ....................................................................................................................13

*Brown v. Martinez*, No. 3:CV-03-2392, 2007 WL 2225842, at *7 (M.D. Pa. July 31, 2007) ....................................................................................................................12

*Capital Bonding Corp. v. New Jersey Supreme Court*, 127 F.Supp.2d 582, 589 (D.N.J. January 30, 2001) ...................................................................................20

*Carroll v. Carman*, 574 U.S. 13, 16 (2014)..............................................................15

*Chavarriaga v. New Jersey Dept. of Corrections*, 806 F.3d 210, 223 (3d Cir. 2015) .................................................................................................................................13

*Conley v. Gibson*, 355 U.S. 41, 47 (1957) ..................................................................4

*Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005) ...............................................4

*Ex parte Young*, 209 U.S. 123, 159-160 .....................................................................20

*Farmer v. Brennan*, 511 U.S. 825, 832 (1994).........................................................16

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ...............................5

*Helling v. McKinney*, 509 U.S. 25, 31 (1993) ..........................................................16

*Hutto v. Finney*, 437 U.S. 678, 686–87 (1978)..........................................................8

*Kentucky v. Graham*, 473 U.S. 159, 167, n. 14 .......................................................20

*Laufgas v. Speziale*, 263 F.App'x 192, 198 (3d Cir. 2008) ................................8, 11

*Lindsey v. O'Connor*, 327 Fed. App'x 319, 321 (3d Cir. 2009)............................11

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011)...............................................5

*Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir.2009)............................................7

*Moore v. Cucchi*, 2011 WL 4594907 at *5 (D.N.J. Sept. 30, 2011) .......................8

*Mora v. Camden County*, No. CIV. 09-4183 (JBS), 2010 WL 2568680 (D.N.J. June 21, 2010) ..........................................................................................................10

*Outterbridge v. Owens*, 1986 WL 12019, *1 (E.D.Pa. Oct.22 1986).....................12

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)............................................................5

*Parkell v. Danberg*, 833 F.3d 313, 331 (3d Cir. 2016)...........................................13

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009)......................................................15

iv

*Penn Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) ........................................17

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ...............................................................................................................5

*Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir.1980)...................................... 7, 8, 11

*Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) ...........................................................16

*Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir.1983).............................................7, 11

*Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) ...............................................................................................................................5

*Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) ....................12

*Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974) ............................................................5

*Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ................................................5

*Southeastern Community College v. Davis*, 442 U.S. 397 (1979)...........................18

*Stevenson v. Carrol*, 495 F.3d 62, 68 (3d Cir. 2007)...................................................9

*Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 724–25 (3d Cir. 1989)........13

*Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir.1998) ............................................7

*Tillman v. Lebanon Cnty. Corr. Fac.*, 221 F.3d 410, 418 (3d Cir.2000) ...............16

*Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, n. 10 (1989)...................20

*Wilson v. Seiter*, 501 U.S. 294, 298 (1991) ................................................................6

*Winthrop v. Yates,* 2016 WL 844839 at *3 (D.N.J. March 4, 2016) ......................11

Statutes

18 U.S.C. § 3626(a)(1)................................................................................................12

42 U.S.C. § 1213(2) ....................................................................................................11

Rules

Fed. R. Civ. P. 8(a)(2)..................................................................................................2

v

## INTRODUCTION

This is not a case about steak and lobster. This case is about the New Jersey Department of Corrections failing to provide its prisoners with a Constitutionally mandated diet necessary to sustain human health. The New Jersey Department of Corrections and Defendants have violated Mr. Skelton and similarly situated prisoners' 8th Amendment right to be free from cruel and unusual punishment. The NJDOC has drastically reduced the necessary vitamins, calories, minerals, and nutrition from the diet it serves its prisoners. The NJDOC is the prisoners' only source of nutrition and it has failed its prisoners by serving unhealthy and nutritionally lacking food. The egregiously unhealthy diet has led to an increase in diabetes, cancer, and high blood pressure among other health conditions in prisoners. Prisoners with serious medical needs are denied prescribed diets that are necessary to maintain their health.  These prisoners are compelled to select food that is bursting with sugar and sodium. These "selections" are made in addition to the already nutritionally devoid diet that the prison is serving the rest of the prison population.

Plaintiffs' complaint adequately states an Eighth Amendment violation. The severely nutritionally lacking diet served by the NJDOC falls below the "nutritionally adequate diet" that the Constitution requires. Further, the Defendants were aware and disregarded the risks that the limited diet posed to its prisoners. Further, the right to this adequate diet was clearly established at the time of the

1

violation. The Americans with Disabilities Act and Rehabilitation Act can provide the relief sought by Plaintiffs. Finally, Plaintiffs correctly seek money damages against the individually named Defendants and injunctive relief against Defendants in their official capacity and against the New Jersey Department of Corrections. Because Plaintiff has successfully pleaded a Constitutional violation, an Americans with Disabilities Act and Rehabilitation Act violation, this Court should deny Defendants' Motion to Dismiss.

## STATEMENT OF FACTS

Raymond Skelton brought a suit on behalf of himself and other similarly situated prisoners incarcerated at South Woods State Prison in Bridgetown, New Jersey. (ECF #1, ¶ 24).  Plaintiff brought the lawsuit on behalf of himself and all others similarly situated pursuant to 42 U.S.C. §1983, the Eight Amendment to the United States Constitution, the Americans with Disabilities Act, and §504 of the Rehabilitation Act of 1973, challenging the New Jersey Department of Corrections' ("NJDOC") diet for prisoners with health conditions. (ECF #1, ¶ 1).

The diet provided by the NJDOC is inadequate to sustain normal health. (ECF #1, ¶ 8).  The NJDOC policy for the diet purportedly adheres to all "qualifying dietary standards established by the United States Department of Agriculture and the Recommended Dietary Guidelines of Food and Nutrition Board, Institute of

2

Medicine, National Academy of Science, of the National Research Council." (ECF #1, ¶ 7). However, this diet increases the likelihood that the prisoners will become sick or weak and increases their risk for heart disease, high blood pressure, and cancer. *Id.* Additionally, prisoners with medical needs are not provided with the requisite, medically required meals and nutrition. (ECF #1, ¶ 41). Officials do not abide by the medically prescribed diets some prisoners are supposed to receive. The diet provided by NJDOC is deficient in calories, nutrients, vitamins, and proteins. (ECF #1 ¶¶ 55-59). Defendants removed nutritious foods and replaced them with processed meat and starches lacking nutritional value. (ECF # ¶ 60). Additionally, healthy foods are served rarely and are served in amounts that are dwarfed by the unhealthy food provided. (ECF #1, ¶ 64).

Defendants have designed and administered a diet that is replete with unhealthy foods, and severely lacking in food necessary for a healthy life. (ECF #1, ¶¶ 70-71). This has led to a significant decline in prisoner health, including increased joint pain, lethargy, an increase in injuries, mental confusion, poor sleep, depression, diabetes, cancer, high blood pressure, heart disease, and obesity. (ECF #1, ¶ 87).

Raymond Skelton has been diagnosed with diabetes, high blood pressure, and high cholesterol. (ECF #1, ¶ 91). Skelton is prescribed diabetic diet meals due to these conditions. (ECF #1, ¶ 93). However, Mr. Skelton receives insufficient calories and his meals often contain spoiled and rotten vegetables, fruits, and meats. (ECF #

3

1, ¶¶ 96-97). Mr. Skelton and similarly situated individuals housed in the prisons operated by the New Jersey Department of Corrections are provided with an inadequate diet in violation of the Eighth Amendment, the Americans with Disabilities Act, and Rehabilitation Act.

## STANDARD OF REVIEW

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ...." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Sanjuan v. Am. Bd.*

*of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); and then citing

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."
>
> *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009)). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff

will ultimately prevail but whether the claimant is entitled to offer evidence to

support the claim." *Twombly*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhoades*, 416

U.S. 232, 236 (1974)); see also *Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly*

expounded the pleading standard for 'all civil actions' ...."); *Fowler v. UPMC

Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* ... provides the final nail in the

coffin for the 'no set of facts' standard that applied to federal complaints before

*Twombly*."). "A motion to dismiss should be granted if the plaintiff is unable to plead

'enough facts to state a claim to relief that is plausible on its face.'" *Malleus*, 641

F.3d at 563 (quoting *Twombly*, 550 U.S. at 570).

# ARGUMENT

I. **PLAINTIFFS' COMPLAINT SHOULD NOT BE DISMISSED BECAUSE THE COMPLAINT ADEQUATELY STATES A CLAIM AND THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.**

## A. Eighth Amendment Claim

Defendants violated Plaintiffs' Eighth Amendment right to be free from cruel and unusual punishment by serving a nutritionally inadequate diet. Under the Eighth Amendment to the Constitution, prisoners have the right to receive a nutritionally adequate diet. At all relevant times in the complaint, this right was clearly established at the time of the violation.

### 1. Defendants' diet policy violated the Eighth Amendment.

To establish an Eighth Amendment claim, a plaintiff must meet two requirements. First, he must demonstrate that the conditions of his confinement pose "a substantial risk of serious harm" to his health or safety. *Farmer*, 511 U.S. at 834. Secondly, he must show that the person or persons responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). As described by the Supreme Court in *Farmer*, the standard for determining deliberate indifference in a condition of confinement case is whether a prison official knew of and disregarded an excessive risk to an inmate's health or safety. *Farmer,* 511 U.S. at 837. The Court added that "it is enough that the official

6

acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. at 842.

Under the Eighth Amendment, prison officials must satisfy inmates' "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney*, 509 U.S. at 32. The Constitution requires "that prisoners be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it' [and] under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir.1983) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir.1980)). "[A] prisoner's diet must provide adequate nutrition, but prison officials cannot be held liable under the [constitutional standard] unless the prisoner shows both an objectively serious risk of harm and that the officials knew about it and could have prevented it but did not." *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir.2009) (citation omitted). Objectively, "[w]hether the deprivation of food falls below this [constitutional] threshold depends on the amount and duration of the deprivation." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir.1999) (quoting *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir.1998)). As the Supreme Court emphasized, "the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.  A filthy, overcrowded cell and a diet of 'grue' [providing

1000 calories a day] might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978). *See Moore v. Cucchi,* 2011 WL 4594907 at *5 (D.N.J. Sept. 30, 2011) (quoting *Berry, Robles,* and *Springborn).* While providing a diet that adheres to a nutritional guideline is not a constitutional requirement, providing a "nutritionally adequate diet" is mandated by the Constitution of the United States. *Laufgas v. Speziale,* 263 F.App'x 192, 198 (3d Cir. 2008) (citing *Ramos v. Lamm,* 639 F.2d at 571).

Further in *Hutto,* the United States Supreme Court affirmed the lower courts' decision which found that an inadequate diet violated the Constitution. The conditions of confinement in Arkansas prisons "constituted cruel and unusual punishment because they resulted in unquestioned and serious deprivations of basic human needs." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). Accordingly, the Supreme Court has stated that the Eighth "Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency, against which we must evaluate penal measures. Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102-103 (1976) (citations omitted).

Here, Defendants fail to provide a "nutritionally adequate diet." Defendants misstate Plaintiffs' arguments. Plaintiffs do not contend that Defendants are required

to follow any nutritional guideline, rather, they use the guidelines as an indication that falling as far below it, as the NJDOC does, indicates a nutritionally inadequate diet. The diet in the NJDOC is lacking in necessary calories, nutrients, vitamins, minerals, and it fails to accommodate dietary restrictions of prisoners. (ECF #1 ¶¶ 1, 55-59). This lack of vital nutrients has been the mainstay of the diet since 2010. (ECF #1, ¶ 9). Prisoners are at a higher risk of diabetes, high blood pressure, high cholesterol, and cancer due to the meals prepared by the Defendants. (ECF #1, ¶ 87). It is not an issue of choice, of prisoners desiring certain flavors or food prepared in particular ways, this is about maintaining the necessary amounts of vital nutrition to ensure stability and sustainability in the health of prisoners. Plaintiff Skelton is prescribed meals due to his diabetes. (ECF #1, ¶ 93). Skelton is regularly served rotten or spoiled fruits, vegetables, and meat. (ECF #1, ¶ 96-97). Defendants are deliberately indifferent.  The conditions of confinement for the Plaintiffs poses a substantial risk of serious harm to their health because of the lack of anything resembling a "nutritionally adequate diet." The Defendants also knew of the substantial risk to the Plaintiffs' health. *Stevenson v. Carrol,* 495 F.3d 62, 68 (3d Cir. 2007) (permitting an inference of mens rea when a restriction is arbitrary, purposeless or excessive). Defendants disregarded this serious risk to the health of the prisoners by failing to provide the requisite nutrition.  Thus Plaintiffs have

alleged both objective and subjective components of a violation of their rights under the Eighth Amendment.

Defendants' cited authorities are inapposite and distinguishable. For example, in *Mora v. Camden County,* No. CIV. 09-4183 (JBS), 2010 WL 2568680 (D.N.J. June 21, 2010), the plaintiffs did not allege when they were at the prison, nor did they describe the diet they were served. Additionally, they made conclusory allegations to the harm they suffered. *Mora* at *9. Here, however, Plaintiffs specify the diet served by the Defendants. Plaintiffs allege how it is insufficient nutritionally, how long the diet has been in place, and the harms they are likely to suffer as a result. See Complaint, ECF #1. Furthermore, Plaintiffs are not seeking damages for personal injuries. They are seeking a nutritionally adequate diet and compensation for a portion of the costs of the meals for not having received the mandatory diet.

Accordingly, taking all the preceding allegations as true and drawing all reasonable inferences in favor of the Plaintiff, Plaintiff has adequately pleaded that Defendants' refusal to provide a "nutritionally adequate diet" violates Plaintiffs' Eighth Amendment right to be free from cruel and unusual punishment. The lack of nutrition necessary to sustain human health provided by the NJDOC's diet falls below the objective standard due to the serious risk of harm that is currently ongoing to Plaintiffs' health. Subjectively, the Defendants were aware of the nutritionally deficient diet they were serving to prisoners and the serious risk of harm that the diet

caused. Plaintiff has detailed that a minimal civilized measure of life's necessities demands a diet adequate to sustain normal health, and Defendants' denial of that right constitutes a severe risk to the prisoners. Therefore, Defendants' Motion to Dismiss should be denied. Further, whether there was a Constitutional violation is a question of fact, therefore, dismissal of the Plaintiffs' claims at the Motion to Dismiss stage is improper.

**2. The right to a nutritionally adequate diet was clearly established at the time of the Eighth Amendment violation.**

An inmate's right to a nutritionally adequate diet, as provided under the Eighth Amendment's prohibition against cruel and unusual punishment, was clearly established at the time of the alleged constitutional violation. The nutritionally inadequate diet has been served since 2010, over thirty years after the Tenth Circuit announced the "nutritionally adequate" standard in *Ramos*. *Ramos*, 639 F.2d at 571. Since then, several courts in this District and Circuit have recognized and enforced the standard enunciated in *Ramos*. See *Laufgas v. Speziale*, 263 Fed.Appx. at 198 ("[P]risoners are guaranteed a nutritionally adequate diet under the Eighth Amendment....") (citing *Ramos*); *Winthrop v. Yates,* 2016 WL 844839 at *3 (D.N.J. March 4, 2016); *Lindsey v. O'Connor,* 327 Fed. App'x 319, 321 (3d Cir. 2009) (citing with approval *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir. 1983)) (quoting *Ramos* 639 F.2d at 571); *Brown v. Martinez*, No. 3:CV-03-2392, 2007 WL 2225842,

11

at *7 (M.D. Pa. July 31, 2007) ("Prisoners are entitled to a nutritionally adequate diet.") (citing *Ramos*); *Outterbridge v. Owens*, 1986 WL 12019, *1 (E.D.Pa. Oct.22 1986).

Therefore, based on the case law of the Third Circuit and other Circuits, entitlement to nutritionally adequate meals was clearly established at the time of the violation. Defendants cannot turn a blind eye to the vast amounts of case law ensuring prisoners have a nutritionally adequate diet. Because Defendants violated Plaintiffs' clearly established constitutional rights, the Defendants are not entitled to qualified immunity.

### B. Supervisory Liability

Hicks and Powell are liable as supervisory personnel for the violation of the Plaintiffs' Constitutional rights. In the Third Circuit, "there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). A plaintiff may establish a claim based on knowledge and acquiescence if the supervisor knew about a practice

12

that caused a constitutional violation and had the authority to change the practice, but chose not to. *Parkell v. Danberg,* 833 F.3d 313, 331 (3d Cir. 2016).

"[T]o establish a claim against a policymaker under § 1983 a plaintiff must allege and prove that the official established or enforced policies and practices directly causing the constitutional violation." *Parkell*, 833 F.3d at 331 (quoting *Chavarriaga v. New Jersey Dept. of Corrections*, 806 F.3d 210, 223 (3d Cir. 2015)). When the supervisory liability is based on a practice or custom, a plaintiff may rely on evidence showing the supervisor "tolerated past or ongoing misbehavior." *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 72 (3d Cir. 2011) (quoting *Baker v. Monroe Township*, 50 F.3d 1186, 1191 n. 3 (3d Cir. 1995)) (citing *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 724–25 (3d Cir. 1989)).

Additionally, The Third Circuit has recognized that long-standing conditions of confinement may reflect the existence of a custom for § 1983 purposes. *Anela v. City of Wildwood*, 790 F.2d 1063, 1069 (3d Cir.1986) (holding that jail's long-standing conditions of confinement constituted a city "custom or usage" for *Monell* purposes); *Bowers v. City of Phila.*, Civ. No. 06–3229, 2008 WL 5210256, *6 (E.D.Pa. Dec.12, 2008) (same).

As the acting commissioner of the NJDOC, Hicks has personal oversight of the health, well-being, and dietary needs of the class.   Given that Plaintiffs'

complaints are of the design of the diet which is standardized among the NJDOC, it is inconceivable that Hicks does not know of system wide issues with the diet.  As with Hicks, Powell is the administrator of the South Woods State Prison and serves in a similar capacity within that one prison.

Here, Hicks and Powell have created a longstanding policy of ensuring a nutritionally inadequate diet for its prisoners.  The prisoners have been subjected to this unhealthy lifestyle for 10 years.  Additionally, prison workers assisting in the kitchens were not adequately trained or supervised.  This led to the defective preparation of meals.  Because of the lack of training, the meals did not contain the proper quantities of foodstuffs as specified in the design of the meals and were not adequate to maintain normal health. Hicks and Powell were aware that the diet being provided to the prisoners was inadequate to meet the needs of normal health. Although aware of these practices, Hicks and Powell did nothing to curtail it, nor to discipline the offenders. Failure to train and discipline evidences acquiescence in the Constitutional violation.  Hicks and Powell knew of these violations but failed to remedy or alter the diet because of a desire to save money, at the expense of the health of the prisoners whose health they are responsible. Because the prison officials and supervisors failed to train, correct unconstitutional policy or discipline offenders, they are liable as supervisors under 42 U.S.C. § 1983.

### C. Qualified Immunity

The Defendants are not entitled to qualified immunity. "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation and quotation omitted). The qualified immunity analysis first considers whether there was a constitutional violation and, if so, whether the right violated was clearly established at the time of the misconduct. *Id.* at 232. "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (quoting *Andersen v. Creighton*, 483 U.S. 635, 640 (1987)). "It is the defendants' burden to establish that they are entitled to such immunity." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001) (citing *Stoneking v. Bradford Area Sch. Dist.,* 822 F.2d 720, 726 (3d Cir. 1989)).

Because qualified immunity results in "immunity from suit rather than a mere defense to liability," determining whether officials are entitled to qualified immunity should be determined "at the earliest possible stage in the litigation." *Id*. at 231-32. But, as the Third Circuit has confirmed, "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 Fed. App'x 788, 791 n.3 (3d Cir. 2009) (per curiam). Thus, at the pleading stage, "qualified

immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)).

While "[t]he Constitution 'does not mandate comfortable prisons,' ... neither does it permit inhumane ones...." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). Thus, the Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care, and personal safety. *See Id*.; *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs ... [that] deprive inmates of the minimal civilized measure of life's necessities." *Tillman v. Lebanon Cnty. Corr. Fac.*, 221 F.3d 410, 418 (3d Cir.2000).

Here, Defendants' policy of serving a nutritionally adequate diet violated the Plaintiffs' Eighth Amendment right to be free from cruel and unusual punishment. Additionally, the right to a nutritionally adequate diet was clearly established at the time of the violation. Defendants knew of the risk that they subjected their prisoners to, and they should not escape liability for their deliberate indifference by qualified immunity. Further, qualified immunity at the Motion to Dismiss stage is improper

16

because there is a question of fact as to whether there is a Constitutional violation that must be resolved before deciding whether qualified immunity is proper.

## II. DEFENDANTS CONSPIRED TO VIOLATE PLAINTIFFS' CONSTITUTIONAL RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT.

Plaintiffs have adequately pleaded a cause of action for Defendants' conspiracy to violate their rights under the Eighth Amendment. Defendants' sole basis for dismissal is their mistaken belief that there is no underlying constitutional violation. As discussed above, Plaintiffs have adequately pleaded a constitutional violation. Because Defendants have failed to identify any other basis for the dismissal of the conspiracy claim, the Court must deny Defendants' motion in this regard.

## III. PLAINTIFFS' COMPLAINT STATES A CLAIM UNDER THE AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT.

Defendants violated the Americans with Disability Act. Pursuant to Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 1213(2). This provision extends to discrimination against prisoners confined in state correctional institutions. *See Penn Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). The ADA seeks "to assure even handed treatment

and the opportunity for [disabled] individuals to participate in and benefit from programs [receiving financial assistance]." *Southeastern Community College v. Davis*, 442 U.S. 397 (1979). The "even handed treatment" requirement does not, however, impose an affirmative obligation on public entities to expand existing programs but only that disabled individuals receive the same treatment as those who are not disabled.

Here, Plaintiff and the class' cause of action for violation of the ADA is founded upon Defendants' practice of denying prisoners with special medical needs a diet adequate to sustain health. That denial of adequate diet is based upon their status as disabled persons, and thus, Plaintiff and the class are being denied access to services or programs because they are disabled. While the prison diet given to all inmates is inadequate, those with serious medical needs are discriminated from other prisoners because the diet leaves them with less food to meet their needs than the normal prisoners. The adverse effects of the diet are enhanced concerning Skelton and members of the class with medical needs. Therefore, Plaintiffs have stated a claim against Defendants for violations of Title II and/or Title III of the ADA.

Similarly, failing to provide care to a class of persons can constitute a violation of the Rehabilitation Act for the same reasons as it can constitute an ADA violation. Therefore, under the same analysis above, Defendants have violated the Rehabilitation Act.

18

## IV.   PLAINTIFFS' CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF EXTEND AS FAR AS NECESSARY TO REMEDY THE DEFENDANTS' VIOLATIONS.

Under the Prison Litigation Reform Act, a district court cannot "grant or approve any prospective relief" respecting prison conditions "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1).

In the current case, the Plaintiffs request an injunction that is narrowly drawn, extends no further than necessary and is the least intrusive means necessary to correct the Constitutional violation ongoing in the prison. It is difficult to imagine that asking the NJDOC to abide by similar regulations that the Bureau of Prisons has determined is appropriate for "normal" health and that providing Plaintiffs with a constitutionally required, "nutritionally adequate diet" is too broad. Simply requiring the prison to follow Constitutionally mandated regulations is not overly broad. Further, Defendants cite no authority for dismissing claims seeking injunctive relief based on the PLRA.

## V.   PLAINTIFFS' CLAIMS AGAINST THE STATE ARE FOR INJUNCTIVE RELIEF AND CLAIMS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITY ARE FOR MONETARY DAMAGES.

Defendant has misconstrued the relief sought and misconstrued against which parties each type of relief is sought against. While government officials sued in their

official capacity and government entities are immune from suits for damages, they are not immune to suits seeking a prospective injunction or declaratory relief. *Capital Bonding Corp. v. New Jersey Supreme Court,* 127 F.Supp.2d 582, 589 (D.N.J. January 30, 2001). "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, n. 10 (1989) (citing *Kentucky v. Graham,* 473 U.S. 159 167, n. 14 and *Ex parte Young,* 209 U.S. 123, 159-160).

Therefore, Plaintiffs' suit against the Defendants in their official capacities and the NJDOC is permitted under the 11th Amendment for prospective injunctive and declaratory relief. Plaintiffs' complaint against the Defendants in their individual capacity for monetary damages and against the NJDOC and Defendants in their official capacity for injunctive relief is proper.

## CONCLUSION

WHEREFORE, Defendants violated Plaintiffs' Eighth Amendment right to be free from cruel and unusual punishment by failing to provide a nutritionally adequate diet. This right was clearly established at the time of the violation. Additionally, Defendants conspired to violate Plaintiffs' civil rights. Defendants further violated Plaintiffs' rights under the Americans with Disabilities Act and the Rehabilitation Act. For the reasons stated herein, Plaintiffs respectfully request this Honorable Court to deny Defendants' Motion to Dismiss. Should this

20

Court find Plaintiffs' complaint defective in any way, Plaintiff s respectfully request leave to amend. Under Fed R. Civ. P. 15(a)(2) leave to amend should be "freely" granted when "justice so requires."

Respectfully Submitted,

EXCOLO LAW, PLLC

*/s/ Solomon M. Radner*

Solomon M. Radner (283502018)
Keith Altman (*p.h.v.*)
Attorneys for Plaintiffs
26700 Lahser Road, Suite 401
Southfield, MI 48033
(866) 939-2656
sradner@excololaw.com
kaltman@excololaw.com

Dated: March 23, 2020