NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

RAYMOND SKELTON on behalf of    :
himself and all other           :
similarly situated persons,     :    CIV. NO. 19-18597 (RMB)
                                :
          Plaintiff             :
     v.                         :            **OPINION**
                                :
NEW JERSEY DEP'T OF CORR.,      :
*et al.*,                       :
                                :
          Defendants            :
_____

Keith Altman, Esq.
Solomon M. Radner, Esq.
EXCOLO Law PLLC
26700 Lahser Road, Suite 401
Southfield, MI 48033
     Attorneys for Plaintiff

Daniel S. Shehata, Deputy Attorney General
Michael Ezra Vomacka, Deputy Attorney General
New Jersey Office of the Attorney General
Richard J. Hughes Justice Complex
25 Market St, P.O. Box 112
Trenton, NJ 08625
     Attorneys for Defendants

**BUMB**, United States District Judge

     This matter comes before the Court upon Defendants'[1] First

Motion to Dismiss Plaintiff's Complaint ("Def's Mot. to Dismiss,"

---

[1]  "Defendants" refers to the moving Defendants, the NJDOC,
Commissioner Marcus O. Hicks ("Hicks"), and Administrator of South
Woods State Prison John Powell ("Powell") in their individual and
official capacities.

Dkt. No. 14; Def's Brief, Dkt. No. 14-1), Plaintiff's Response to Defs' Mot. to Dismiss ("Pl's Opp. Brief," Dkt. No. 15), and Defs' Reply Brief (Defs' Reply Brief, Dkt. No. 17). Plaintiff is a prisoner at South Woods State Prison who brings a putative class action challenging the constitutionality of the prisoner diet provided by the New Jersey Department of Corrections. Pursuant to 42 U.S.C. § 1997e(c)(1)[2], the Court may *sua sponte* screen the Complaint for immunity and failure to state a claim. This Court will decide the motion on the briefs without an oral hearing, pursuant to Federal Rule of Civil Procedure 78(b).

For the reasons discussed below, the Court grants Defendants' motion to dismiss and dismisses the claims against NJDOC with prejudice as barred by the Eleventh Amendment, and dismisses the claims against Hicks and Powell without prejudice for failure to state a claim.

---

[2]  42 U.S.C.A. § 1997e(c)(1) provides:

(c) Dismissal

(1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

I.   BACKGROUND

A.   <u>Procedural History</u>

Plaintiff filed his initial complaint as a purported class action on October 2, 2019. (Compl., Dkt. No. 1.) Defendants requested a pre-motion conference pursuant to the Court's Individual Procedure Requirements. (Letter, Dkt. No. 9.) The Court entered an order permitting Defendants to proceed with filing the present motion to dismiss. (Order, Dkt. No. 13.)

B.   <u>The Complaint</u>

Plaintiff makes the following allegations in his Complaint, taken as true for purposes of this motion to dismiss.

1.   *Summary of allegations*

Plaintiff, who suffers from diabetes, is currently incarcerated at the South Woods State Prison in Bridgetown, NJ. (Compl., ¶ 24.) Since 2010, Plaintiff has been medically prescribed diabetic meals in South Woods state prison. (<u>Id.</u>, ¶¶ 93, 95.) Throughout the years of his incarceration, Plaintiff has provided grievance after grievance that the prisoner diet is not adequate to sustain normal health and does not meet his serious medical needs. (<u>Id.</u>, ¶ 24.) In addition to the Moving Defendants, the Complaint alleges claims against John Doe dieticians, food service directors, and past NJDOC administrators. Plaintiff asserts a putative class action under 42 U.S.C. § 1983, the Americans with

3

Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA") and Section
504 of the Rehabilitation Act of 1973, as amended, at 29 U.S.C. §
794. (Compl., Dkt. No. 1.)

   2.   *The contents of the prisoner diet*

All prisoners in the NJDOC are provided with standardized
meals designed by the NJDOC. (Compl., ¶ 4.) NJDOC policy, set forth
in Internal Management Procedure FMP.002.MENU.001, states the
prisoner diet adheres to all "qualifying dietary standards
established by the United States Department of Agriculture
("USDA") and the Recommended Dietary Guidelines of Food and
Nutrition Board, Institute of Medicine, National Academy of
Science, or the National Research Council." (Compl., ¶ 7.) In fact,
the diet does not adhere to any government or medical standards.
(see e.g. Compl., ¶ 15, 44, 51, 52.)

As designed and prepared, the diet served to prisoners during
the class period since 2010 is not adequate to sustain normal
health in that it is deficient in calories, nutrients, vitamins,
and minerals, and is comprised of foods that do not allow prisoners
to self-select meals which comply with their health needs,
particularly for those with diabetes. (Compl., ¶ 9.) Defendants
removed virtually every fruit and vegetable critical to human
health and replaced it with paste, white flour, and starches like
potatoes and rice. (Id., ¶ 15.) Defendants also removed virtually
all healthy proteins replacing them with processed meats, many of

4

which contain almost no actual protein. (Id.) The diet is filled
with empty starches, zero fiber, almost no protein, and no
nutrition. (Compl., ¶ 67.) Diabetes is and can be caused by poor
quality, high-fat, high-starch diets. (Id., ¶ 68.) The NJDOC serves
a diet to prisoners, including diabetics, of grits, overcooked
carrots, white bread, greasy processed meats, cookies, cakes,
white rice, sugary drinks, margarine, and constant potatoes-all
foods to be avoided by diabetics. (Id.)

3. *The diet for prisoners with dietary medical needs*

Instead of providing meals specifically for diabetic
individuals, prisoners with diabetes are required to self-select
from the standard meal offerings, but the meals, as designed and
prepared, did not allow for those with diabetes to select foods
which were appropriate for diabetics and to provide adequate
nutrition at the same time. (Id., ¶ 14.) For virtually all
prisoners whose illnesses are affected by diet, Defendants provide
absolutely no healthful options. (Id., ¶ 22.) Further, the NJDOC
only offers unhealthy food for prisoners for sale by prison
vendors, including foods with high sodium, high fat, and high sugar
content. (Id., ¶¶ 20, 21.)

4. *Preparation of the prisoner diet*

Plaintiff alleges,

> [t]he NJDOC menu as designed by the NJDOC,
> with full knowledge and acquiescence of all
> Defendants, is not the menu that is actually

5

> prepared and served. The menu is designed to
> fool outside agencies into believing that the
> prisoners are receiving adequate nutrition
> when they are not. Even if the menu as designed
> is what is actually served, it does not stand
> the most basic nutritional scrutiny when held
> up to the light of normal dietary standards
> and        government        guidelines        and
> recommendations.

(Id., ¶ 77.) "Defendants are responsible for generating 'bogus' menus that may, on their face, appear to provide some semblance of an appropriate diet." (Id., ¶ 79.) "Plaintiffs receive nowhere near the portions of the many food items alleged, as the Food Defendants[3] order kitchen workers to "short" amounts of food far below the stated, or required, levels." (Id., ¶ 81.) "Plaintiff Skelton has challenged this practice and has repeatedly grieved this issue, as have hundreds of other inmates." (Id., ¶ 82.) The menus also falsely represent food served, such as cheese, which contains protein, vitamins, and minerals, but what is served is watered-down liquid cheese, which does not contain any nutrition. (Id., ¶ 84.)

    5.   *Personal Involvement of the Defendants*

    Plaintiff alleges that NJDOC was responsible for designing the inadequate diet. (Id., ¶ 4.) Defendants created, mandated, and served this diet knowing the harm it causes. (Id., ¶ 11.)

---

[3] John Doe Food Service Directors and Dieticians are alleged to oversee and/or implement the NJDOC prisoner diet. (Compl., ¶¶ 30, 31, 33.)

6

Defendants conspired together to provide meals to prisoners which were not sufficient to maintain normal health and conspired to deny proper nutrition to prisoners with medical needs. (Id., ¶ 13.) Defendants prepared a diet that did not meet the nutritional needs for prisoners to sustain good health. (Id., ¶ 115.)

Allegations specific to Hicks and Powell are as follows. Hicks has personal oversight of prisoners' health, well-being, and dietary needs. (Id., ¶ 27.) Hicks and Powell, together with the John Doe Defendants, "the Individual Defendants," (Id., ¶ 135) were aware that the diet being provided to the prisoners was inadequate to meet the needs of normal health and did nothing to correct it. (Id., ¶ 134.) "Throughout the years of his incarceration, Skelton has provided grievance after grievance that the prisoner diet is not adequate to sustain normal health and does not meet his serious medical needs." (Id., ¶ 24.) Powell continued a policy started by former Administrators that deliberately eliminated required food from diabetic meals. (Compl., ¶ 98.) Prison workers who assisted in the kitchen were inadequately trained and supervised, leading to defective preparation of the meals. (Id., ¶ 133.) "Plaintiff has complied with all aspects of the pre-exhaustion requirements of the Prison Litigation Reform Act through the appropriate grievance processes of the NJDOC." (Id., ¶ 90.) The Individual Defendants did not

change the diet in response to Plaintiff's grievances. (Id., ¶ 134.)

6. *Harm to Plaintiff and the putative class*

The prisoner diet, as prepared, harmed both Plaintiff and the putative class because the meals did not contain the proper quantities of food and were not adequate to maintain normal health. (Id., ¶ 133.) The diet has led to a substantial increase in various conditions such as diabetes and heart disease. (Id., ¶ 10.) The failure to provide Plaintiff with diabetic meals has resulted in Plaintiff having a blood sugar level outside acceptable medical ranges, and caused him to suffer hypoglycemic episodes, chronic nausea, hypertension, constant weakness, nerve damage, and other physical ailments. (Id., ¶¶ 100-02.) The diet has caused the putative class to suffer from

> weakened immune systems, increased [sic] in debilitating illnesses, accelerated aging, obesity, worsening of (or creation of) their diabetes, high blood pressure, heart disease and cancer among other disorders), muscle loss, joint pain and damage, mental confusion and debility, vision and hearing disturbances, and mental imbalances as so many mandatory nutrients are critical to not just physical health, but mental health.

(Id., ¶ 23.)

II. STANDARD OF REVIEW

The standard for dismissal of a prisoner's claim regarding prison conditions under 42 U.S.C. 1997e(c)(1) for failure to state

a claim is the same standard as for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which governs dismissal for failure to state a claim in federal courts. See generally Shane v. Fauver, 213 F.3d 113 (3d Cir. 2000). In reviewing the sufficiency of a claim under Federal Rule of Civil Procedure 12(b)(6), a court must first identify the legal elements required to state a cognizable claim. Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 74 (3d Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Santiago v. Warminster Twp., 629 F.3d 121, 129-30 (3d Cir. 2010).

Second, the court should identify allegations that are no more than conclusions that are not entitled to an assumption of truth. Id.; Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016). Under Twombly and Iqbal, "even outlandish allegations" are entitled to a presumption of truth unless they are merely "formulaic recitations of the elements of a … claim." Id. (citing Iqbal, 556 U.S. at 681.) "[T]he clearest indication that an allegation is conclusory and unworthy of weight in analyzing the sufficiency of a complaint is that it embodies a legal point." Connelly, 809 F.3d at 790 (citing Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) (citation and internal quotation marks omitted).

Third, a court must determine whether the "well-pleaded factual allegations plausibly give rise to an entitlement to

relief." Argueta, 643 F.3d at 74 (citations omitted.) The plausibility requirement "'is not akin to a 'probability requirement.'" Id. (quoting Iqbal, 129 S. Ct. at 1949.) The plausibility requirement requires a pleading to show "'more than a sheer possibility that a defendant has acted unlawfully.'" Connelly, 809 F.3d at 786 (citing Iqbal, 556 U.S. at 678)). Allegations that are "merely consistent with a defendant's liability" … are not enough. Santiago, 629 F.3d at 133 (quoting Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks omitted)). Where there is an allegation consistent with a defendant's liability but there is an "obvious alternative explanation," the inference of the defendant's liability is not plausible. Id.

A plaintiff has the burden of pleading sufficient "factual matter" but not to plead "specific facts." Schuchardt v. President of the United States, 839 F.3d 336, 347 (3d Cir. 2016) (quoting Boykin v. KeyCorp, 521 F.3d 202, 215 (2d Cir. 2008) (quoting Twombly, 550 U.S. at 569; Erickson v. Pardus, 551 U.S. 89, 93 (2007)). "Implicit in the notion that a plaintiff need not plead 'specific facts' to survive a motion to dismiss is that courts cannot inject evidentiary issues into the plausibility determination." Schuchardt, 839 F.3d at 347 (citation omitted). A court may not dismiss a complaint based on the court's "assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the

factfinder." Id. (quoting Twombly, 550 U.S. at 573.) On a Rule 12(b)(6) motion to dismiss, courts must accept the Plaintiff's allegations as true "with the important caveat that the presumption of truth attaches only to those allegations for which there is sufficient "factual matter" to render them "plausible on [their] face." Id. at 353 (quoting Iqbal, 556 U.S. at 679).

III. MOTION TO DISMISS

A. Eleventh Amendment Immunity and "Persons" under 42 U.S.C. § 1983

Defendants move to dismiss Plaintiff's claims for monetary damages against the NJDOC and Hicks and Powell in their official capacities based on Eleventh Amendment immunity and because they are not "persons" subject to § 1983 liability. (Defs' Brief, Dkt. No. 14-1 at 29-32.) Plaintiff submits that his claims against NJDOC and its officials in their official capacities are limited to claims for prospective injunctive relief. (Pl's Opp. Brief, Dkt. No. 15 at 24-25.)

First, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n. 10 (1989) (quoting Kentucky v. Graham, 473 U.S., at 167, n. 14). Second, pursuant to Ex Parte

<u>Young</u>,[4] a plaintiff may bring § 1983 claims for prospective injunctive relief against state officials in their official capacities without offending the Eleventh Amendment. <u>Virginia Office for Prot. & Advocacy v. Stewart</u>, 563 U.S. 247, 254–55 (2011).

The same is not true for prospective relief claims asserted against a state or state agency by name. <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100, 104 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.") The Eleventh Amendment "prohibits suits against a 'state' in federal court whether for injunctive, declaratory or monetary relief." <u>Lawson v. Shelby Cty., TN</u>, 211 F.3d 331, 335 (6th Cir. 2000); <u>Alabama v. Pugh</u>, 438 U.S. 781, 782 (1978) ("There can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [the State] has consented to the filing of such a suit"); <u>Seminole Tribe of Fla. v. Fla.</u>, 517 U.S. 44, 58 (1996) ("we have often made it clear that the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment.")

---

[4] 209 U.S. 123 (1908).

Therefore, the Court will dismiss the § 1983 claims against NJDOC based on Eleventh Amendment immunity. Hicks and Powell, in their official capacities, do not have Eleventh Amendment immunity for Plaintiff's claims for prospective injunctive relief. Defendants, however, further argue that Plaintiff's claims for prospective injunctive relief do not meet the pleading requirements of the PLRA. (Defs' Brief, Dkt. No. 14-1 at 27-28.) Plaintiff contends there is no pleading requirement for prospective relief under the PLRA. (Pl's Opp. Brief, Dkt. No. 15 at 24.)

18 U.S.C. § 3626, as amended by the PLRA, provides, in pertinent part,

> (a) Requirements for relief.—
>
> > (1) Prospective relief.--(A) Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

By its plain language, the statute does not require that a plaintiff must plead a narrowly tailored claim for injunctive relief, but rather the statute expressly limits the court's power to grant or approve the prospective relief requested. Geisinger Community Med. Ctr. v. Sec'y U.S. Dep't of Health & Human Servs., 794 F.3d 383, 391 (3d Cir. 2015) (quoting Rosenberg v. XM Ventures, 274 F.3d 137, 141 (3d Cir. 2001) ("[w]here the statutory language is plain and unambiguous, further inquiry is not required.") Therefore, Plaintiff's claims for prospective injunctive relief under § 1983 against Hicks and Powell in their official capacities are not barred by 18 U.S.C. § 3696.

B.   Eighth Amendment Claims under 42 U.S.C. § 1983

42 U.S.C. § 1983 provides a private citizen with the right to bring an action against any person who under color of state law deprives him of a right or privilege secured by the Constitution of the United States. The statute does not create substantive rights but instead "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (citations omitted). To state a viable § 1983 claim, a plaintiff "must establish that [ ]he was deprived of a federal constitutional or statutory right by a state actor." Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009).

Plaintiff, on behalf of a putative class of NJDOC prisoners, alleges that Defendants violated the Cruel and Unusual Punishments Clause of the Eighth Amendment by failing to provide him with a nutritionally adequate diet, and by failing to provide him, as a diabetic, with a diet adequate for his serious medical needs. There are two distinct Eighth Amendment analyses applicable to these claims, the first involves failure to protect an inmate's health, and the second involves adequacy of treatment for a prisoner's serious medical needs.

> 1.  *Failure to protect inmate health*
>
> >  a.  *Failure to provide prisoners nutritionally adequate food constitutes an Eighth Amendment violation*

"'[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment[.]'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993). "[P]rison officials must ensure that inmates receive adequate food…." <u>Id.</u> Circuit Courts, including the Third Circuit, have interpreted "adequate food" to include nutritionally adequate food. <u>Laufgas v. Speziale</u>, 263 F. App'x 192, 198 (3d Cir. 2008) (citing <u>Ramos v. Lamm</u>, 639 F.2d 559, 571 (10th Cir. 1980); <u>Robles v. Coughlin</u>, 725 F.2d 12, 15 (2d Cir. 1983). The Complaint contains sufficient factual allegations that the food provided was not nutritionally adequate because the diet was far below any

government or medical standard for nutrition. Plaintiff adequately alleged that the diet presented a substantial risk to the health of all prisoners by alleging it caused them to develop or to exacerbate pre-existing conditions of diabetes, heart disease, and other serious illnesses.

Mora v. Camden Cty.,[5] cited by Defendants, is not precedential, nor is it persuasive because, here, Plaintiff makes factual allegations beyond those pled in Mora. The District Court in Mora held that the allegations were insufficient to state a claim "because aside from alleging that the coffee and tea were weak, the cabbage was raw, and the ketchup and mustard were insufficiently supplied, Plaintiffs do not describe the diet they were served at all." Mora, 2010 WL 2560680, at *9. The plaintiffs in Mora also failed to plead the dates of their incarceration or "otherwise plead facts showing how long they allegedly suffered from malnutrition." Id. Further, the alleged harm in Mora, diminished mental and physical faculties and diminished resistance to fatigue and illness, was not sufficiently serious to state an Eighth Amendment claim. Id. The Complaint here does not suffer the same deficiencies because it contains many of allegations of nutrients lacking in the diet and allegations that Plaintiff suffered significant damage to his health.

---

[5] Mora, No. CIV.09-4183 (JBS), 2010 WL 2560680, at *9 (D.N.J. June 21, 2010).

> b. *Deliberate indifference and personal involvement in a constitutional violation*

The Court turns to the deliberate indifference component of a claim for failure to protect Plaintiff's health from a substantial risk of harm.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837. For an Eighth Amendment claim "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Id. For example, a trier of fact may find actual knowledge by a prison official's exposure to evidence of a pervasive, well documented risk. Id.

Defendants argue that Plaintiff's allegations are conclusory and fail to state the Individual Defendants' personal involvement in a constitutional violation. (Defs' Brief, Dkt. No. 14-1 at 16-18, 21-23.) Additionally, Defendants contend that Plaintiff's allegations lodged against "Defendants" generally constitute

improper group pleading that fails to put Hicks and Powell on notice of their alleged involvement in the claims. (Def's Brief, Dkt. No. 14-1 at 16 citing <u>Sheeran v. Blyth Shipholding S.A.</u>, 2015 U.S. Dist. LEXIS 168019, at *8, 2015 WL 9048979 (D.N.J. Dec. 16, 2015) (citing <u>Ingris v. Borough of Caldwell</u>, 2015 WL 3613499, at *5 (D.N.J. June 9, 2015)). Specifically, Defendants assert that it is implausible to infer that Hicks and Powell, as the administrator and commissioner of the DOC, prepared the menus or the prisoners' meals. (<u>Id.</u> at 16.) Finally, Defendants maintain that Plaintiff did not set forth more than conclusory statements that the Defendants were subjectively aware of the inadequacies of the diet and failed to respond. (<u>Id.</u>)

Defendants are correct that Plaintiff cannot establish Powell's and Hick's deliberate indifference by alleging that "Defendants," as a group including the NJDOC generally and hundreds of unidentified prison employees and/or contractors, designed, prepared, and served Plaintiff a nutritionally inadequate diet since 2010. "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Iqbal</u>, 556 U.S. at 676; <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005). Moreover, it is not plausible that the Commissioner of the NJDOC or the Administrator

18

of South Woods State Prison designed, prepared, or served the NJDOC prisoner meals.

        c.    *Knowledge and acquiescence in a constitutional violation by reviewing a prisoner's grievances*

Plaintiff also asserts personal involvement by Hicks and Powell by their knowledge and acquiescence in the designing, preparing, and serving Plaintiff a nutritionally inadequate diet since 2010. Knowledge and acquiescence in a subordinate's constitutional violation can establish a supervisor's liability for an Eighth Amendment violation. Evancho, 423 F.3d at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Plaintiff relies on his grievances to establish Hick's and Powell's knowledge and acquiescence. In the context of prisons conditions, knowledge and acquiescence may be established by a supervisor's receipt of a prisoner's correspondences. Atkinson v. Taylor, 316 F.3d 257, 270-71 (3d Cir. 2003); see also Vance v. Peters, 97 F.3d 987, 993 (7th Cir. 1996) ("a prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition.") Plaintiff, however, does not specifically state that Powell or Hicks received his grievances, rather he alleges that he

fully exhausted all issues raised in the Complaint according to the NJDOC's established grievance process.

The Court takes judicial notice that New Jersey Administrative Code 10a:1-4.1 through 10a:1-4.9 governs the NJDOC "Inmate Remedy System." Under this system, if a dispute is not resolved by staff, the inmate may file an "Administrative Appeal" to the "Administrator or designee." N.J. Admin. Code § 10A:1-4.4(c). "The Administrator or designee shall be responsible for … [r]eviewing all 'Administrative Appeals,' making the final Department of Corrections decision relative to the 'Administrative Appeal' and ensuring the decision or finding is provided to the inmate within the designated time frame[.]" N.J. Admin. Code § 10A:1-4.7(a)(3). To establish Powell's knowledge and acquiescence in the alleged Eighth Amendment violation for failure to protect inmate health, Plaintiff must allege it was Powell, and not a designee, who reviewed Plaintiff's grievances. Plaintiff cannot establish Commissioner's Hick's knowledge and acquiescence in a constitutional violation by his exhaustion of the NJDOC inmate remedy system because the regulations do not require appeal to the Commissioner and Plaintiff does not allege that he specifically wrote to Hicks about his grievances.

> d.   *Supervisory liability by policy or practice*

Plaintiff also seeks to establish Powell's personal involvement in a constitutional violation by alleging his

continuation of a policy "started by former Administrators" that
deliberately eliminated required food from his diet. (Compl., ¶
98.) The Court construes this as a failure to supervise claim, for
which a

> plaintiff must identify a supervisory policy
> or practice that the supervisor failed to
> employ, and then prove that: (1) the policy or
> procedures in effect at the time of the
> alleged injury created an unreasonable risk of
> a constitutional violation; (2) the defendant-
> official was aware that the policy created an
> unreasonable risk; (3) the defendant was
> indifferent to that risk; and (4) the
> constitutional injury was caused by the
> failure to implement the supervisory practice
> or procedure.

Barkes v. First Correctional Medical, Inc., 766 F.3d 307, 317 (3d
Cir. 2014), overruled on other grounds by Taylor v. Barkes, 135 S.
Ct. 2042 (2015)); Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir.
1999).

Plaintiff alleges there was a practice at South Woods State
Prison and the NJDOC of eliminating virtually all nutritious food
from the prisoner diet. As described in Barkes, the existence of
a policy or practice is insufficient to plead supervisory liability
absent allegations that the official was aware that the policy or
practice created an unreasonable risk of a constitutional injury,
and the official was indifferent to that risk. Absent allegations
that Hicks or Powell reviewed Plaintiff's grievances, Plaintiff

has not sufficiently alleged the deliberate indifference element of his Eighth Amendment failure to protect claim.

        e.   *Establishing deliberate indifference through circumstantial evidence*

It is also possible to establish deliberate indifference from circumstantial evidence." <u>Farmer</u>, 511 U.S. at 837. For example, a trier of fact may find actual knowledge by a prison official's exposure to evidence of a pervasive, well documented risk. <u>Id.</u> Plaintiff alleges that, since 2010, consuming the prison diet caused him to suffer hypoglycemic episodes, chronic nausea, hypertension, constant weakness, and nerve damage. Plaintiff, however, also alleges that diabetic prisoners were instructed and trained to choose appropriate foods from the available food to satisfy their special dietary needs. Therefore, even assuming for the sake of argument that Powell knew Plaintiff suffered these maladies since 2010, he might have concluded that it was Plaintiff's decision to eat food restricted by his medically prescribed diet that caused the harm. Deliberate indifference cannot be established where there is an obvious alternative to explain the harm suffered by the plaintiff.

The Court must also consider whether it was obvious to Hicks or Powell, based on circumstantial evidence, that the NJDOC diet posed a substantial risk of serious harm to inmate health by providing inadequate nutrition to all prisoners and inadequate

calories to those with medically prescribed dietary restrictions. While a reasonable factfinder might infer that the NJDOC Commissioner and Administrator of a New Jersey state prison had a general knowledge of the food provided to prisoners, Plaintiff must also allege facts establishing that Hicks and Powell knew the diet posed a substantial risk to inmate health.

Plaintiff alleges that the diet led to a substantial increase in diabetes and heart disease among prisoners, and "upon information and belief, a review of the incidence of diabetes among the class will show a substantial elevation compared to other prison systems and even within the NJDOC from before the present diet was developed." (Compl., ¶ 10.) Similarly, Plaintiff alleges "[c]ancer, heart disease, and high blood pressure are on the rise in the NJDOC…." (Id., ¶ 15.) These allegations are insufficient for a factfinder to infer that it was obvious to Hicks and Powell that the NJDOC diet posed a substantial risk to inmate health because the incidence of these illnesses among prisoners in the NJDOC may be attributable to a higher incidence of incarceration of persons having these illnesses as pre-existing conditions.

Plaintiff also alleges that the NJDOC diet did not provide a sufficient amount of food appropriate for a diabetic or others with medically restricted diets to maintain adequate nutrition or sufficient calories. Plaintiff does not allege facts establishing that it would have been obvious to Powell and Hicks that prisoners

were suffering from malnutrition, for instance by observing the weight loss or weakness of the many prisoners with restricted diets, resulting from inadequate food or nutrition.

### f.   _Failure to train or supervise_

Finally, Plaintiff asserts liability based on failure to train and supervise food preparers, whom he alleges intentionally "shorted" the amount of food served by watering it down; substituting cheese with "fake" liquid cheese and meats with harmful "processed meats"; and serving rotten fruit, vegetables, and meat. "'Failure to' claims" such as "failure to train, failure to discipline, or … failure to supervise—are generally considered a subcategory of policy or practice liability." Barkes, 766 F.3d at 317, reversed on other grounds by Taylor v. Barkes, 575 U.S. 822 (2015)). "[T]he level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged." Id. at 319. Here, the intent required is deliberate indifference. Thus, to state an Eighth Amendment failure to supervise claim against a state official, a plaintiff must allege "that a state official, by virtue of his or her own deliberate indifference to known deficiencies in a government policy or procedure, has allowed to develop an environment in which there is an unreasonable risk that a constitutional injury will occur, and that such an injury does occur." Id. at 320.

The supervisory practice that Plaintiff alleges Hicks and Powell failed to employ was training the food preparers to prepare and serve a nutritionally adequate diet in sufficient amounts for all prisoners, including those who were required to choose only certain food permitted by their special diets. Plaintiff alleges the food preparation training and supervision was deficient because it was common practice for the food preparers to "short" food, substitute improper food, and serve rotten food. "[T]here are limited circumstances in which an allegation of a "failure to train" can be the basis for liability under § 1983." City of Canton, Ohio v. Harris, 489 U.S. 378, 387 (1989). Ordinarily, "[a] pattern of similar constitutional violations by untrained employees" is necessary "to demonstrate deliberate indifference for purposes of failure to train." Thomas v. Cumberland Cty., 749 F.3d 217, 223 (3d Cir. 2014) (citing Connick v. Thompson, 131 S. Ct. 1350, 136 (2011).

The alleged NJDOC practices of shorting food, substituting non-nutritional food, and serving rotten food are not practices so well known to pose a substantial risk to inmate health that it was obvious to prison officials that training and supervision must be deficient. While NJDOC prisoners have alleged similar claims, Plaintiff has not cited to such an abundance of cases that the risk of a constitutional violation must have been obvious to prison administrators. True, it is well known that prison food is

25

unappetizing and occasionally spoiled, the same is not true of
Plaintiff's claim that the food, as designed and/or prepared,
lacked adequate nutrition for at least ten years.

Because Plaintiff has failed to establish Hick's or Powell's
deliberate indifference or personal involvement in an Eighth
Amendment violation for failure to protect inmate health and by
failure to train NJDOC food preparers, the Court will dismiss these
§ 1983 claims without prejudice and need not address Defendants'
qualified immunity claims.

2.   Deliberate Indifference to a Serious Medical Need

Plaintiff alleges a second type of Eighth Amendment violation
on behalf of a putative class, that he was prescribed a special
diet to treat his diabetes and Defendants failed to provide the
diet as prescribed. The analysis for such a claim diverges from
that of an Eighth Amendment failure to protect inmate health.
"[D]eliberate indifference to serious medical needs of prisoners
constitutes the unnecessary and wanton infliction of pain …
proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S.
97, 104 (1976) (internal quotation omitted). This includes
intentional interference with prescribed treatment. Id. "[A]bsent
a reason to believe (or actual knowledge) that prison doctors or
their assistants are mistreating (or not treating) a prisoner, a
non-medical prison official … will not be chargeable with the

Eighth Amendment scienter requirement of deliberate indifference."
Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).

Plaintiff encounters the same roadblock in establishing deliberate indifference to his serious medical need. The allegation that Plaintiff and other prisoners were instructed on how to choose proper foods for their special diets requires Plaintiff to allege Hicks and Powell were deliberately indifferent to the fact that the food offered was so inadequate to meet their special diets that they were forced to choose between insufficient amounts of food or eating food that exacerbated their medical conditions. As discussed above, Plaintiff has not adequately alleged Hicks and Powell had knowledge of the inadequacies of the diet, particularly where Plaintiff alleges there was a written policy that the NJDOC diet met the standards of the USDA and Food and Nutrition Board, Institute of Medicine, National Academy of Science and National Research Council.

Because Plaintiff has failed to establish Hick's or Powell's deliberate indifference or personal involvement in an Eighth Amendment violation for failing to provide adequate medical care for their serious medical needs, the Court will dismiss these § 1983 claims without prejudice and need not address Defendants' qualified immunity claims.

C. Conspiracy Under 42 U.S.C. § 1983

Plaintiff brings his conspiracy claim under 42 U.S.C. § 1983. (Compl., ¶¶ 42, 139–42.)

> The elements of a claim of conspiracy to violate federal civil rights are that "(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs ... any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States," with the added gloss under § 1983 that "the conspirators act 'under the color of state law.'"

Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 294 n. 15 (3d Cir. 2018) (quoting Barnes Foundation v. Township of Lower Merion, 242 F.3d 151, 162 (3d Cir. 2001) (quoting 42 U.S.C. § 1983)).

> After a plaintiff establishes that the object of the conspiracy was the deprivation of a federally protected right, "the rule is clear that" the plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184–85 (3d Cir. 2009) (citing *Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990)). To show agreement, he must demonstrate that "the state actors named as defendants in the[ ] complaint somehow reached an understanding to deny [the plaintiff] his rights," *Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993), and in the absence of direct proof, that "meeting of the minds" or "understanding or agreement to conspire" can be "infer[red]" from circumstantial evidence, *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008). Such circumstantial evidence may include that the alleged conspirators "did or said something ... to

> create an understanding," "the approximate
> time when the agreement was made, the specific
> parties to the agreement[,] the period of the
> conspiracy, or the object of the conspiracy."
> *Great W. Mining*, 615 F.3d at 178–79 (citations
> omitted).

Id. at 295.

Defendants move to dismiss the conspiracy claim based on Plaintiff's failure to state an underlying Eighth Amendment violation. The Court will dismiss the conspiracy claim without prejudice for failure to allege an underlying constitutional violation, and for the additional reason that the conspiracy allegations in the Complaint are wholly conclusory.

D.   Americans with Disabilities and Rehabilitation Act Claims

Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. State prisons are public entities for purposes of this provision. Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998); Chisolm v. McManimon, 275 F.3d 315, 325 (3d Cir. 2001) ("Title II of the ADA applies to services, programs and activities provided within correctional institutions.") The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her

29

or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ..." 29 U.S.C. § 794(a). The Third Circuit has explained that "[t]he substantive standards for determining liability under the [RA] and the ADA are the same." Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 275 (3d Cir. 2014) (quoting Ridley Sch. Dist. v. M.R., 680 F.3d 260, 282–83 (3d Cir. 2012) (citation omitted).

To state a claim under either the ADA or the Rehabilitation Act, a plaintiff "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." Furgess v. Pennsylvania Dep't of Corr., 933 F.3d 285, 288–89 (3d Cir. 2019). Where the plaintiff seeks compensatory damages, he "must also show intentional discrimination under a deliberate indifference standard." Id. "The term 'disability' means, (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 563 (1999) (quoting 42 U.S.C. § 12102(2)); Goldstine v. FedEx Freight Inc., No. C18-1164 MJP, 2019 WL 5455726, at *6 (W.D. Wash. Oct. 24, 2019) ("the updated ADA definition of a "qualifying disability" requires only

that a medical condition substantially limit a major life activity….")

Defendants submit that Plaintiff's allegations of inadequate medical treatment do not violate the ADA and Rehabilitation Act. (Defs' Brief, Dkt No. 14-1 at 25-27.) Plaintiff counters that while the NJDOC diet given to all inmates is inadequate, those with serious medical needs are discriminated against because they receive less food than prisoners who do not require special diets. (Pl's Opp. Brief, Dkt. No. 15 at 23.) Thus, the adverse effects of the diet are greater for those with special medical needs. (Pl's Opp. Brief, Dkt. No. 15 at 23.) Therefore, Plaintiff contends the Complaint states a claim for violation of the ADA and Rehabilitation Act. (Id.) In reply, Defendants note that Plaintiff has not cited any precedent in support of his ADA and Rehabilitation Act claims, nor has he distinguished those cases cited by Defendants. (Defs' Reply Brief, Dkt. No. 17 at 8.)

The Third Circuit cases cited by Defendants' for their argument that allegations of inadequate medical care for the serious medical needs of prisoners do not violate the ADA or the Rehabilitation Act,[6] are not precedential. Moreover, Plaintiff has

---

[6] In Kokinda v. Pennsylvania Dep't of Corr., 663 F. App'x 156, 157 (3d Cir. 2016), the plaintiff was a prisoner with soy allergies who asserted an ADA claim based on the prison's failure to provide him with a soy-free diet. In the non-precedential opinion, the Third Circuit dismissed the ADA claim, holding that the ADA prohibits disability-based discrimination, "not inadequate

distinguished his ADA and Rehabilitation Act claims by asserting
that the adverse effects of the NJDOC diet served to all prisoners
are greater for diabetics such as Plaintiff and others with
medically prescribed dietary restrictions because they receive
less food by virtue of having to self-limit from the food served
to all prisoners, and that they are not left with sufficient food
to provide adequate calories or nutrition. These allegations, if
proven, may be sufficient to show that Plaintiff was otherwise
"subject to discrimination, by reason of his disability."

Nonetheless, Plaintiff's allegations under the ADA and
Rehabilitation Act fail to state a claim because he does not
sufficiently allege that his diabetes substantially limits a major
life activity. Johnson v. Amtrak, 390 F. App'x 109, 113 (3d Cir.
2010) ("the discomfort or inconvenience that accompanies Johnson
as a result of his diabetes, colitis, and back, neck, and knee
injuries does not constitute a disability, as defined by the ADA.")
Furthermore, for his claims for compensatory damages under the ADA
and Rehabilitation Act, Plaintiff must also allege facts
establishing Defendants' intentional discrimination. Furgess, 933
F.3d at 288. To show intentional discrimination, Plaintiff would
have to allege facts showing that Hicks and Powell knew there was

treatment for the disability." Id. at 159. The Third Circuit later
held that Kokinda was not entitled to relitigate his ADA claim on
remand. Kokinda v. Pennsylvania Dep't of Corr., 803 F. App'x 574,
576 (3d Cir. 2020).

an insufficient amount of appropriate food for diabetics to choose from. As discussed above, Plaintiff has not alleged sufficient facts of their actual knowledge or that the deficiency was obvious to them. For these reasons, the Court will dismiss Plaintiff's ADA and Rehabilitation Act claims without prejudice.

IV.  CONCLUSION

For the reasons discussed above, Plaintiff's claims against the NJDOC are barred by the Eleventh Amendment and will be dismissed with prejudice. Plaintiff's claims against Hicks and Powell in their individual and official capacities fail to state Eighth Amendment claims of failure to protect inmate health and failure to provide adequate medical care for serious medical needs, fail to state a conspiracy claim under 42 U.S.C. § 1983, and fail to state claims for violation of the ADA and Rehabilitation Act. These claims will be dismissed without prejudice. An  appropriate Order follows.


**Date:** **October 30, 2020**          s/Renée Marie Bumb
                                        **RENÉE MARIE BUMB**
                                        **United States District Judge**