Keith Altman (*pro hac vice*)
Solomon Radner (P73653)
**LAW OFFICE OF KEITH ALTMAN**
33228 West 12 Mile Road, Suite 375
Farmington Hills, MI 48334
Telephone: (248) 987-8929
Email: keithaltman@kaltmanlaw.com
Email: solomonradner@kaltmanlaw.com
*Attorneys for Plaintiffs and The Class*

## IN THE UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAYMOND SKELTON on behalf of himself and all similarly situated persons, | Civil Action No. 1:19-cv-18597-RMB-SAK |
| *Plaintiffs,* | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| VICTORIA L. KUHN, individually and in their official capacity, WILLIE BONDS, individually and in their official capacity, JONATHAN BRANGANZA, individually and in their official capacity, JAMES FRANK, individually and in their official capacity, ERIN NARDELLI, individually and in their official capacity, MARCUS O. HICKS, individually and in their official capacity, PATRICIA ESCH, individually and in their official capacity, ALEXANDRA DAVANZIO, individually and in their official capacity, GIANCARLO MARCUCCI, individually and in their official capacity, | ***DOCUMENT FILED ELECTRONICALLY*** |

ANNIE MOTLEY, individually and )
in their official capacity, )
GABRIEL GUACIARO, individually )
and in their official capacity, )
SYLVIA BRUNSON, individually )
and in their official capacity, )
MICHAEL O'CONNELL, )
individually and in their official )
capacity, )
ELI JIMENEZ, individually and in )
their official capacity, )
CANDACE MYERS, individually )
and in their official capacity, )
JAMIL HOWARD, individually and )
in their official capacity, )
JULIETTE EKEMEZIE, individually )
and in their official capacity, )
JAMES CRACKOVICH, individually )
and in their official capacity, )
)
                    *Defendants.* )

---

## <u>SECOND AMENDED CLASS ACTION COMPLAINT</u>

NOW COMES Plaintiff RAYMOND SKELTON on behalf of himself and all others similarly situated, by and through their undersigned counsel, Solomon M. Radner and Keith Altman of The Law Office of Keith Altman, hereby states as follows:

## <u>BACKGROUND</u>

1. Before the Court is the Plaintiff's Proposed Class action lawsuit, challenging the unconstitutionality of the New Jersey Department of Corrections' ("NJDOC") prisoner diet for those with diabetes.

2.  Plaintiff also brings this action under the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* ("ADA") and Section 504 of the Rehabilitation Act of 1973, as amended, at 29 U.S.C. §794 (the "Rehabilitation Act").

3.  The proposed class consists of:

    All inmates incarcerated in prisons under the direction of the NJDOC who were provided a diet which was inadequate to maintain normal health.  A further subclass is those inmates incarcerated in prisons under the direct supervision of the NJDOC who were not provided a diet commensurate with medically documented special needs.

4.  All prisoners in the NJDOC are provided with standardized meals designed by the NJDOC.  With the design of the diet, Defendants removed many items which are critical to the normal health and necessary for those with serious medical needs.

5.  New Jersey Department of Corrections policies, established by the Commissioner of that department, apply to all state prisons in New Jersey.

6.  The New Jersey Department of Corrections established a policy with regard to the nutrition in inmate meals.

7.  The New Jersey Department of Corrections policy, set forth in Internal Management Procedure FMP.002.MENU.001, allegedly adheres to all "qualifying dietary standards established by the United States Department of Agriculture and the Recommended Dietary Guidelines of Food and Nutrition Board, Institute of Medicine, National Academy of Science, of the National Research Council."

8.   While the Proposed Class has no right to specific foods, flavors or flavorings, or perhaps even appearance, the Class does have right to a diet that is adequate to sustain

normal health, that does not endanger their health and that does not subject them to cruel and unusual punishment, sicken or weaken them, and significantly increases their risk for heart disease, high blood pressure and cancer.

9. As designed and prepared, the diet served to prisoners during the class period since 2010 is not adequate to sustain normal health in that it is deficient in calories, nutrients, vitamins, minerals, and is comprised of foods that do not allow prisoners to self-select meals which comply with their health needs, particularly for those with diabetes.

10. Furthermore, the present diet has led to a substantial increase in various conditions such as diabetes and heart disease.  Absent the atrocious, illegal, and constitutionally deficient diet, Prisoners would be substantially healthier.  On information and belief, a review of the incidence of diabetes among the class will show a substantial elevation compared to other prison systems and even within the NJDOC from before the present diet was developed.

11. Defendants, created, mandated, and serve this diet knowing full well of the harms and suffering it has caused and continues to cause to the Class Members, looking only to the "financial bottom line" even as the NJDOC budget swelled during the class period in which they removed healthful foods, nutrients, antioxidants, vitamins, minerals, protein, fiber, healthy fats, cruciferous and known anti-cancer foods, and substances

12. Defendants acted with deliberate indifference as they eliminated foods critical to human health, ignoring the effect the diet had and continues to have on the class members and their present and long-term health and well-being.

13. Defendants conspired together to provide meal products to prisoners which were not sufficient to maintain normal health.  Furthermore, Defendants conspired together to deny proper nutrition to prisoners with medical needs.

14. In addition, Defendants knew or should have known that the meals as prepared were unsuitable for those with diabetes.  Instead of providing a meal-specific for diabetic individuals, those with diabetes were required to self-select from the standard meal offerings.  Unfortunately, the meals as designed and prepared did not allow for those with diabetes to select foods which were appropriate for diabetics and provide adequate nutrition at the same time.

15. The Class has been adversely affected by this diet in countless ways. Cancer, heart disease, and high blood pressure are on the rise in the NJDOC since the Defendants literally removed virtually every fruit and vegetable critical to human health.  These have been replaced them with paste, white flour, nutritionally lacking starches like potatoes and rice.  Defendants also removed virtually all healthy proteins replacing them with processed meats, many of which contain almost no actual protein, even as the United State Government, United States Department of Agriculture, the American Medical Association, the National Institute for Health, the American Cancer Society and endless others, have repeatedly cautioned Americans about consuming no more than two servings of processed meat per week maximum.

16. Meats like beef, turkey and turkey breast, chicken, and chicken breast, as well as fresh fish were replaced with artificial substitutes, "breaded fish" (which contains almost no

actual fish and thus no actual protein) and "processed turkey" masking as everything from "bologna" to "chicken".

17. Virtually all proteins were eliminated from the breakfast meal, leaving the Class nothing more than processed white flour bread, "grits", and similar nutritionally void starchy carbohydrates. The Defendants also removed virtually all breakfast fruits (grapefruit, bananas, oranges).

18. Where thousands of prisoners take statin drugs for high cholesterol, and where statins are medically accepted to deplete Coenzyme q10 levels, critical for cardiovascular health, the diet is devoid not just of this highly important substance, but virtually all others essential for human health.

19. Defendants did not stop with just the elimination of virtually every single, healthful, government recommended or mandated food and nutrient/caloric requirement but went so far as to obliterate the nutritional value of the few alleged "healthy choices" that remained.

20. The Class fares no better with the prisoner store. Though the NJDOC has prison vendors that offer and sell healthful foods and natural substances to prisoners in jails and prisons throughout the country, with the exception of very few items, the NJDOC only offers unhealthy food for prisoners.

21. High sodium, high fat, high sugar chips, cookies, pies, cakes, candy bars, cereals, and pastries are the "fare de riguer". Even the nuts sold to prisoners are literal "sodium bombs."

22. Further, there are thousands of Class Members with heart disease, diabetes, cancer, and high blood pressure, all of which are unquestionably attributable to, and affected by the diet.  Thousands of other Class members have bowel disease and allergies which are significantly affected by diet. For virtually all, Defendants provide absolutely no healthful options.

23. The Defendants willfully, deliberately and maliciously went out of their way to create a monstrous diet that has caused the Class (many of whom have to subsist on this diet for anywhere from 15-50 years) immeasurable harm in illness, weakened immune systems, increased in debilitating illnesses, accelerated aging, obesity, worsening of (or creation of) their diabetes, high blood pressure, heart disease and cancer among other disorders), muscle loss, joint pain and damage, mental confusion and debility, vision and hearing disturbances, and mental imbalances as so many mandatory nutrients are critical to not just physical health, but mental health.

## PARTIES

### PLAINTIFFS

24. Plaintiff Raymond Skelton is currently incarcerated at the South Woods State Prison in Bridgetown, NJ.  Plaintiff Skelton suffers from diabetes which requires that he be provided a specialized diet.  Throughout the years of his incarceration, Skelton has provided grievance after grievance that the prisoner diet is not adequate to sustain normal health and does not meet his serious medical needs.

25. Plaintiff Skelton is also a member of a subclass of individuals who have serious medical needs for an alternate diet from the standard prisoner diet.  Furthermore, the subclass meets the definitions of a qualified individual with a disability under 42 U.S.C. § 12131(2) and thus is also disabled under 29 U.S.C. § 705(9)(B).

## **<u>DEFENDANTS</u>**

26.   Jonathan Branganza ("Branganza") is the Administrative Analyst IV who manages dieticians who created the present diet, based on mandates given to them by the NJDOC senior staff.  Branganza with deliberate indifference to the needs of the prisoners, failed to mediate the designed diet knowing that the diet was not adequate to maintain normal health and that it was highly likely that prisoners' health would suffer as a result.  Branganza is sued in his official and individual capacity.

27.   James Frank ("Frank") is the Administrative Analyst III who manages the dieticians who created the present diet, based on mandates given to them by the NJDOC senior staff.  Frank, with deliberate indifference to the needs of the prisoners, failed to mediate the designed diet knowing that the diet was not adequate to maintain normal health and that it was highly likely that prisoners' health would suffer as a result. Frank is sued in his official and individual capacity.

28.   Victoria L. Kuhn ("Kuhn") is the Commissioner of the NJDOC. Kuhn oversees the NJDOC in its entirety. Kuhn, with deliberate indifference to the needs of the prisoners, failed to mediate the designed diet knowing that the diet was not adequate to maintain normal health and that it was highly likely that prisoners' health would suffer as a result.  Kuhn is sued in his official and individual capacity.

29.   Marcus O. Hicks ("Hicks") was the Commissioner of the NJDOC from 2018-2021. Hick oversaw the NJDOC in its entirety. Hicks, with deliberate indifference to the needs of the prisoners, failed to mediate the designed diet knowing that the diet was not adequate to maintain normal health and that it was highly likely that prisoners' health would suffer as a result.  Hicks is sued in his official and individual capacity.

30.   Willie Bonds ("Bonds") is the Deputy Commissioner of the NJDOC. Bonds oversees the NJDOC in its entirety reporting to the NJDOC Commissioner. Bonds, with deliberate indifference to the needs of the prisoners, failed to mediate the designed diet knowing that the diet was not adequate to maintain normal health and that it was highly likely that prisoners' health would suffer as a result.  Bonds is sued in his official and individual capacity.

31.   Erin Nardelli ("Nardelli") is the Assistant Commissioner for the Division of Operations of the NJDOC. Nardelli oversees the NJDOC in its entirety reporting to the NJDOC Deputy Commissioner. Nardelli, with deliberate indifference to the needs of the prisoners, failed to mediate the designed diet knowing that the diet was not adequate to maintain normal health and that it was highly likely that prisoners' health would suffer as a result.  Nardelli is sued in his official and individual capacity.

32.   Patricia Esch ("Esch") is the dietician who from 2016-2021 created the diet, based on mandates given to her by the NJDOC senior staff.  Dietician Esch, with deliberate indifference to the needs of the prisoners, designed the diet knowing that the diet was not adequate to maintain normal health and that it was highly likely that prisoners'

health would suffer as a result.  Dietician Esch is sued in his official and individual capacity.

33.  Alexandra Davanzio ("Davanzio") is the dietician who created the current diet, based on mandates given to her by the NJDOC senior staff.  Dietician Davanzio, with deliberate indifference to the needs of the prisoners, designed the diet knowing that the diet was not adequate to maintain normal health and that it was highly likely that prisoners' health would suffer as a result.  Dietician Davanzio is sued in his official and individual capacity.

34.  Defendant Keller ("Keller") is the Food Service Director who is responsible for overseeing the provision of food services to members of the class throughout the NJDOC. FSD Keller, with deliberate indifference to the needs of the prisoners, oversaw the implementation of the diet knowing that the diet was not adequate to maintain normal health and that it was highly likely that prisoners' health would suffer as a result.  FSD Keller is sued in his official and individual capacity.

35.  Defendant Giancarlo Marcucci ("Marcucci") is the Food Manager at South Woods State Prison. Marcucci served the illegal diet described herein, who condoned, supported or assisted in implementation of the deficient and unconstitutional diet are sued herein.  Marcucci is sued in his official and individual capacity.

36.  Defendant Annie Motley ("Motley") is the Food Manager at the Adult Domestic Treatment Center. Motley served the illegal diet described herein, who condoned, supported or assisted in implementation of the deficient and unconstitutional diet are sued herein.  Motley is sued in her official and individual capacity.

37.   Defendant Gabriel Guaciaro ("Guaciaro") is the Food Manager at Bayside State Prison. Guaciaro served the illegal diet described herein, who condoned, supported or assisted in implementation of the deficient and unconstitutional diet are sued herein. Guaciaro is sued in his official and individual capacity.

38.   Defendant Sylvia Brunson ("Brunson") is the Food Manager at East Jersey State Prison. Brunson served the illegal diet described herein, who condoned, supported or assisted in implementation of the deficient and unconstitutional diet are sued herein. Brunson is sued in her official and individual capacity.

39.   Defendant Michael O'Connell ("O'Connell") is the Food Manager at Edna Mahan Correctional Facility. O'Connell served the illegal diet described herein, who condoned, supported or assisted in implementation of the deficient and unconstitutional diet are sued herein.  O'Connell is sued in his official and individual capacity.

40.   Defendant Eli Jimenez ("Jimenez") is the Food Manager at Garden State Correctional Facility. Jimenez served the illegal diet described herein, who condoned, supported or assisted in implementation of the deficient and unconstitutional diet are sued herein.  Jimenez is sued in his official and individual capacity.

41.   Defendant Candace Myers ("Myers") is the Food Manager at Midstate Correctional Facility. Myers served the illegal diet described herein, who condoned, supported or assisted in implementation of the deficient and unconstitutional diet are sued herein. Myers is sued in her official and individual capacity.

42.   Defendant Jamil Howard ("Howard") is the Food Manager at New Jersey State Prison. Howard served the illegal diet described herein, who condoned, supported or assisted in implementation of the deficient and unconstitutional diet are sued herein. Howard is sued in his official and individual capacity.

43.   Defendant Juliette Ekemezie ("Ekemezie") is the Food Manager at Northern State Prison. Ekemezie served the illegal diet described herein, who condoned, supported or assisted in implementation of the deficient and unconstitutional diet are sued herein.  Ekemezie is sued in her official and individual capacity.

44.   Defendant James Crackovich ("Crackovich") is the Food Manager at Central Production Kitchen. Crackovich produced the illegal diet described herein, who condoned, supported or assisted in implementation of the deficient and unconstitutional diet are sued herein.  Crackovich is sued in his official and individual capacity.

45.   Each of the Administrator Defendants failed to protect Plaintiff and the Class Members and each Administrator Defendant expressed their full knowledge and understanding as to the ramifications and effects of such a deficient diet.

46.   The Individual Defendants, acting within their official capacity and under the color of state authority are each personally liable for the misconduct, their actions, or their failure to act and as such all these Defendants are sued in their individual, official, supervisory and administrative capacities as appropriate and as permitted by law with enunciated claims for damages appropriate and where permitted by law.

47.   The individual defendants conspired together to violate the rights of the Class and these acts are not within the scope of their employment.  The role played by each individual defendant is known only to the individual defendants at this time.

## JURISDICTION AND VENUE

48.   This action seeks damages and injunctive relief under 42 U.S.C. §§ 1983 & 1985. This court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343. It has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. This court also has jurisdiction under the provisions of 28 U.S.C. § 2201 as this action is filed to obtain declaratory relief regarding the constitutionality of the actions and policies of local government.

49.   Venue properly lies within this District under 28 U.S.C. § 1391(b). The named defendants perform their official duties in this District, and the events and omissions giving rise to plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

50.   Plaintiff and Class members adopt by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

51.   The NJDOC prisoner diet as designed and prepared is not adequate to sustain the normal health of the prisoners.  Furthermore, prisoners with serious medical needs are not provided with required meals and nutrition.

52.   The Class asserts that the NJDOC and the individual Defendants, as a body, engaged in a willful agreement and conspiracy to knowingly and deliberately violate not just

13

the rights and needs of the Class Members, but even the most commonly accepted "norms" for diet and the foods now understood to be essential to human health.

53. For example, one can today perform a simple internet search for the "Food Pyramid" and find an enormous variety of these "pyramids" which are almost universal in their depiction of the most basic foods required to maintain good health and ward off disease, to include but not limited to, broccoli, cauliflower, avocados, asparagus, apricots, tomatoes, nuts, garlic, brussel sprouts, 3 servings of dairy a day, (the NJDOC does not even provide this), tea (the NJDOC removed this also), and real meats with strict limitations on processed meats, (which make up 90-95% of the NJDOC meats), whole grains (the NJDOC offers none), with further strict limitations on bleached, nutritionless "white" foods like white bread, white rice, starchy and nutrient-empty potatoes, grits, cookies, etc., while banning all nutritious grains such as whole wheat, teff, millet, amaranth, quinoa, and similar.

54. This approach to prisoner nutrition cannot be by "accident" for each and every governmental, medical and related health institute, order, organization, society and their like from the American Cancer Society to the United States Military all follow these very same regulations and recommendations. It is the NJDOC, a state governmental agency that has absolute responsibility for the health, welfare, and well-being of their charges that deems itself "immune" from the common standards accepted without question in the health and medical communities.

55. Even where America houses what are considered "the worst of the worst" within the confines of our facility in Guantanamo Bay, Cuba, the United States Government

provides to known or suspected terrorists a diet far, far, better than what New Jersey serves to the most basic drunk driver or retail fraud perpetrator.

56.   According to our nation's government, they provide this fair and nutritious diet to "the worst" because according to their own statement, this is the diet determined to be proper for human health; a diet which includes fruit and fruit juice at breakfast with a protein food, whole grain breads and cereals, 16 oz. of milk, tea or coffee, (the NJDOC provides neither), and their diet is in fact, complete in accordance with the dictates of the United States Department of Agriculture Food Pyramid from berries and melon to eggs, nuts, the many vegetables cited herein, real meats, real fish, etc. This diet is served to this diet and these notations are taken from a June 2017 printing of their present diet.

57.   The United States Government's Bureau of Prisons mimics this same governmental diet all the way to its most secure "supermax facility" ADX, Florence, Colorado where everyone from the "Unibomber" (Ted Kaczinski) to the Oklahoma City Bomber Timothy McVeigh, (prior to his execution) received an equally healthy diet, not out of any desire to "pamper" these individuals, but because this is the same diet the United States Government has determined to be appropriate for "normal" health; not "special" or "exceptional" health, but just that required to sustain normal health.

58.   A June review of their Federal Bureau of Prisons – national Menu FY (Fiscal Year) 2017 finds again, tuna, real fish, real chicken, other real meats, eggs, chickpeas, nuts, black beans, lentils, tomatoes, real cheese, hearty salads, sweet potatoes, hummus, soups, sandwiches, tofu, roasted beef, chili, broccoli, cauliflower, brussel sprouts, and

once more, all those necessary foods that the NJDOC deliberately removed with no equivalents in nutrition, calories, protein or critical compounds.

59. The NJDOC even removed tea.  Overwhelming evidence and hundreds of studies by prestigious facilities and medical, health and governmental agencies have confirmed the health, anti-disease, anti-cancer, antioxidant and related properties of tea, still offered in federal facilities and even Guantanamo Bay. Regardless, the NJDOC removed tea.

60. Sulfur deficiency is the likely cause of so many Class Members increases in severe joint injuries as Sulfur is critical to joints and ligaments/tendons, skin and cells.  Tea (offered 3 times a day by the federal government) is also an important source of sulfur. Mushrooms, one of the only food-based sources of sulfur, were removed by the NJDOC without cause of adequate replacement from both the prisoner diet and the prisoner store.

61. The Defendants almost daily use of highly processed meats not only endangers the Class members health and well-being, but processed meats are now accepted by the Food & Drug Administration, the American Medical Association, the National Institutes of Health, the American Cancer Society, the United States Department of Agriculture and the United States Government as well as the World Health Organization as dangerous carcinogens akin to smoking and asbestos, (though not equally carcinogenic), as also noted by The Johns Hopkins School of Public Health, with a 2015 W.H.O. Designation as confirmed carcinogens. As such, these meats are

16

absent from the Federal and Military Diets and should be absent from the NJDOC's as well.

62. The United States Recommended Daily Allowances, (considered insufficient and outdated now and superseded by the World Health Organizations Guidelines) provide for at least three servings of dairy per day (the NJDOC provides only two) and the requirement of 2 grams of calcium per day for a "150lb. sedentary (inactive) male", far below the NJDOC's present offering. It is also now understood that after years of being told to "avoid milkfat" that in fact "low-fat milk" is deficient in nutrition and more importantly, the essential fats that we are now educated to consume more of. The NJDOC of course, eliminated the fat-containing milk products and now only serves the "fat-free" forms; the exact opposite of governmental and medical guidelines and recommendations.

63. The NJDOC does not virtually nothing to offer any low-sodium options for those with high blood pressure, (a significant population within the NJDOC to include Plaintiff Skelton) and inundates the Class with white flour and bread, both significant sources of excess sodium and to be avoided by those with high blood pressure, again according to all governmental agencies as well as for example, The Cleveland Clinic's Heart and Vascular Institute.

64. The NJDOC prisoner diet as presently offered is deficient in Flavonoids, Carotenoids, Phenolic compounds, Terpenoids, Lutein, Lycopene, Curcumin, Resveratrol, Apigenin, Isothiocyanates, Genistein, ursolic acid, Polyphenols, Ellagic acid, Zeaxanthin.  These nutrients are all necessary to sustain normal health.

65. The NJDOC diet as presently offered is deficient in the following vitamins: A, B1, B2, B3, B4, B6, B12, B17, C in both water and fat-soluble forms, D (in all forms, cholecalciferol, ergocalciferol etc.), E (in all forms, alpha, delta, gamma tocopherol, etc.), K, PABA, Biotin and related co-factors, and folic acid, critical to female health.

66. Before the Food Defendants began providing meal products to prisoners, the diet included adequate amounts of these vitamins.

67. The NJDOC diet as presently offered is deficient in the following minerals: phosphorous, boron, calcium (especially deficient in those who cannot consume milk or milk products as the NJDOC offers no alternative source for this essential substance), iron, magnesium, potassium, zinc, selenium, chromium, silicon, sulfur, and copper.

68. The NJDOC diet as presently offered is deficient in the following other substances:

   a. Co-Enzyme Q10, critical for heart health and virtually absent from the NJDOC diet and diminished by the use of statin drugs, which thousands of Class Members take.

   b. Essential fats, critical to health, immune, joint and cardiovascular integrity, brain and nervous system health, etc. These are critically absent from the NJDOC diet.

   c. Proanthocyanidins, critical to cellular health, immune function and aging.

   d. Conjugated Linoleic Acid (CLA almost completely absent from the NJDOC diet.

e.  Inositol and choline, critical for brain and nerve health among other things and virtually absent from the NJDOC diet.

f.  Bioflavonoids, critical for among other things, blood vessel, capillary, skin and eye health and virtually absent from the NJDOC diet. (This includes the important quercetin which was available in the NJDOC but is no longer.)

g.  The mineral/elements strontium, vanadium, manganese and MK-4 and MK-7, (subforms of Vitamin K), all critical for bone health.

h.  Alpha Lipoic Acid, a protector of the cell and cell membrane and a powerful anti-oxidant which also extends the "life" of other antioxidants including glutathione, Vitamin C & E, Q10, etc.

i.  N-Acetyl Cysteine, a critical precursor to the body's primary cellular antioxidant glutathione.

j.  Glutathione, critical to the health of all living cells, immune function, detoxification, and liver health.

k.  Diindolylmethane, (DIM), which balances hormones, especially in women and once available in the cruciferous vegetables removed by the NJDOC including broccoli, cauliflower, and brussels sprouts.

l.  Indole-3-Carbinol, a powerful anti-cancer, and healthful substance also found in the same cruciferous vegetables removed by the Defendants from the NJDOC diet.

m.  Probiotics, critical for bowel and digestive as well as immune health, these were once provided to the Class Members in the form of yogurt, available

daily at some facilities and at the least weekly at almost all facilities, but which is now denied to the Class completely.

n.  Fiber, critical for bowel and digestive health and once available in abundance in the NJDOC diet through an extensive selection of high-fiber fruits and vegetables, virtually all of which have been removed from the diet. Likewise, the Defendants removed all high-fiber whole grain breads and all whole-grain cereals except for a bland, NutraSweet flavored, highly unpopular cereal referred to by prisoners as twigs", which also has very little nutritional value.

o.  Protein, critical for the health of every single portion of the human body is critically deficient in the NJDOC and when provided, comes in the form of almost solely processed meats, "breaded fish" and "breaded chicken" products which contain almost no actual fish or chicken, sausages, two identical items ironically labeled as "Salisbury steak" and "meatballs" but both of which are low in actual meat and made with bread filler.

p.  This lack of protein includes a lack of all the critical Amino Acids, counted at numbers far below the nutritional needs of for example the grown males in the NJDOC. (The USRDA's which the NJDOC rarely meets, besides being incredibly outdated and below the World Health Organization Guidelines to which the United States is a Member and Signatory to treaties of or with, are set for a "150lb. inactive male" also assuming no health

problems perfect digestion, almost never of which are the case with the class members.

q. Phosphatidylcholine and phosphatidylserine are naturally occurring phospholipids (fats) critical to brain health, cell membrane integrity, brain glucose metabolism and more. These substances are critically absent from the NJDOC diet.

r. Omega 3 Fatty Acids, once available to the Class through the regular servings of fresh, real fish, and seafood products, these are now absent from the NJDOC, though so essential for good health, that the NJDOC chose to sell these to the Class Members through the prisoner store after they removed them from the prisoner diet.

s. Collagen, critical to joint, skin, nail and bone health, is critically absent from the NJDOC diet.

t. Methylsulfonylmethane, (MSM), is critical to joints, skin, tendons, and even hair and was originally provided to the Class in foods like tea, green vegetables, and eggs, all removed from the NJDOC diet.

u. Betaine Hydrochloride (or Trimethylglycine; TMG) is a critical anti-homocysteine agent, supports the production of hydrochloric acid in the stomach, is a digestant and more. TMG was available to the Class Members, in eggs which as noted the Defendants completely removed from the diet.

69. Proteins were once offered to the Class members such as whole chicken and chicken breast, whole turkey and turkey breast, unprocessed red meat, unprocessed pork (such

as pork chops), ham, bacon, lamb, real fish including cod, catfish, pollock, tilapia, and "sea legs" a "psuedocrab" which contained actual crab along with other fish products, salmon patties and salmon cakes, game hen, etc.

70. The Defendants removed all these nutritious foods and replaced them with empty starches, potatoes often twice a day, and highly processed meats including hot dogs, gristle-filled "burger patties" (far below the required size to meet protein needs and low in protein themselves as they are filled with fillers, starches, chemicals, etc.) highly processed "polish sausages" often themselves filled with gristle" and non-meat parts, "fake meats" (highly processed turkey product made to look like "bologna" "ham", etc.) and the before mentioned "breaded fish and chicken" which with the breading removed, contained almost no visible fish or chicken meat and thus, no protein).

71. Other protein sources removed by the Defendants, also met many of Prisoners other nutritional needs, such as red beans and rice, (which are a complete protein when combined), black beans lentils and chickpeas, most nuts to include almonds and almond butter, pecans and walnuts, (which also provide important essential fatty acids), real cheese, (which also provide important essential fatty acids), real cheese, (which besides protein offered calcium, phosphorous, boron, vitamin D, etc., yogurt with probiotics, and whole grain breads and cereals. These were replaced with nutritionally lacking white bread.

72. Milk, once offered at all meals, was reduced to twice a day, thus denying the Class sufficient protein, calcium, etc. Defendants also refuse to provide an alternative to the

many Class Members who for health, allergy, or medical reasons, cannot drink cows' milk. These Prisoners cannot obtain any calcium, phosphorous, sufficient protein, etc., in their diet, which is endangering their health in the long-term.

73.   Sufficient calories are unavailable in the NJDOC diet, unless one agrees to eat the unhealthy and dangerous portions of the diet, i.e., nutritionally lacking, bland potatoes, cookies, cakes, sweet desserts as well as huge clots of a highly processed, chemical filled "margarine and butter substitute".

74.   Healthful foods where rarely available are served in minuscule portions. For example, the massively overcooked "greens" (rarely served) are served by the tablespoon, while on might receive an enormous, sugary cookie, white bread, and unflavored, poorly cooked "potatoes slices".

75.   The Defendants calculate these nutritional empty and diabetes causing foods as "calories" to include the sugar and margarine. Should a prisoner wish to not these unhealthy and dangerous foods, there is no alternative.

## A.  DIABETES RISK IN THE PRESENT DIET

76.   Plaintiff and Class members adopt by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

77.   The present NJDOC diet is filled with almost nothing but empty, sugary starches, zero fiber, almost no protein, and no nutrition.

78.   Diabetes is and can be caused by poor quality, high-fat, high-starch diets. The NJDOC serves a present diet of grits, overcooked carrots, white bread, greasy processed meats, cookies, cakes, white rice, sugary drinks, margarine, and constant potatoes-all foods

to be avoided by diabetics to those very same diabetics right after they receive their insulin shots.

**B. ACTIONS OR INACTIONS OF THE DEFENDANTS**:

79.   Plaintiff and Class members adopt by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

80.   Defendants have acted with deliberate indifference for the health of the prisoners by designing and providing a diet which is inadequate to sustain normal health. Furthermore, Defendants fail to provide medically necessary diets to prisoners suffering from various medical conditions such as diabetes, heart disease, and food allergies.

81.   Defendants conspired to either withhold or remove healthful foods from the diet, and instead fill it with starchy carbohydrates, dangerous and highly processed meats, and empty calories in the form of sugars, fats, sweetened chemical-laden drinks.

82.   The NJDOC has control of the NJDOC prisoner stores and  mandates filling the store selections with almost nothing but highly fatted, highly salted and high sugar, preservative-laden "junk food" such as "Danishes", "honey buns" cookies, cakes, pies, "pop-tarts", numerous "chip" items, candy bars, processed, exceedingly low-grade sausages, and processed "pouch foods" like "chili" with almost no nutritional value and enormous quantities of fat, sodium and preservatives.

83.   The combination of a diet inadequate to sustain normal health, the failure to provide medically necessary meals, and the prisoner store lacking nutritious items is a direct

causal factor in the rise of significant health conditions of the prisoners such as diabetes and heart disease.

## C.  CONSPIRING TO "SHORT" THE DIET

84.  Plaintiff and Class members adopt by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

85.  Prisoners are ordered to "short" the menu by making or serving less than the already insufficient amounts of food presently offered. By shorting the menu, this leads to a lower cost for the NJDOC.

86.  Examples of the above conduct are:

    a.  watering down of vegetables, hot cereals, mixed foods, sauces, liquid cheese products, etc., or

    b.  loading meal products with expired, old bread scraps and similar fillers

87.  The NJDOC menu as designed with full knowledge and acquiescence of all Defendants, is not the menu that is actually prepared and served.  The menu is designed to fool outside agencies into believing that the prisoners are receiving adequate nutrition when they are not.  Even if the menu as designed is what is actually served, it does not stand the most basic nutritional scrutiny when held up to the light of normal dietary standards and government guidelines and recommendations.

## D.  PREPARING FRAUDULENT MENUS FOR REVIEW

88.  Plaintiff and Class members adopt by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

89. Upon information and belief, Defendants are responsible for generating "bogus" menus that may, on their face, appear to provide some semblance of an appropriate diet.

90. However, even if the menu were true and accurate, it would still be deficient.

91. Plaintiffs receive nowhere near the portions of the many food items alleged, as the Food Defendants order kitchen workers to "short" amounts of food far below the stated, or required, levels.

92. Plaintiff Skelton has challenged this practice  and has repeatedly grieved this issue, as have hundreds of other inmates.

93. Foods are falsely represented.

94. Defendants regularly serve fake "cheese" products, such as liquid cheeses, which Defendants then water down even further.  This is not an issue of "taste" or "preference," but rather that for years the Defendants "counted nutrients" found in real cheese, such as calcium, phosphorus, magnesium, Vitamin D, and protein, which are not found in the fake, "liquid cheese."

95. To "cover their tracks", the Defendants prepare completely deceptive "menus" which supposedly "reflect" the fare offered to prisoners, but which in no way are an accurate representation of the meal products actually served.

## E.  THE EFFECTS OF THE PRESENT DIET

96. Plaintiff and Class members adopt by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

97. Because of the diet provided to Prisoners, there has been a significant decline in the Prisoner's health and well-being. This includes increased joint pain, lethargy, significantly increased injuries, mental confusion, poor sleep, skin disorders, blurring of vision, diminishing of other senses, headaches, low-energy, agitation and spontaneous rage or depression, (a likely effect of the ways in which diet significantly affects mental health, mood, stability, and well-being). Most concerning is an explosion in diabetes among the prison population as well as the significant progression of those with diabetes when entering the prison system.  There are also significant increases in cancer, high blood pressure, heart disease, obesity and mental disorders caused by this terrible "diet".

98. Because of the lack of healthy foods in the diet, some prisoners have resorted to theft from the kitchens in a desperate attempt to maintain their normal health.   The most common things stolen from NJDOC kitchens are the healthier foods, which are scarce, such as raisins, green peppers and onions, cheese and the rare real meats such as the once a week "real chicken". It is shameful that prisoners must resort to theft to get more than 5 or 6 raisins, or a few small pieces of pepper or onion or a slice of processed cheese because the defendants removed all the healthy foods from both their meal halls and prisoner stores.

## **COMPLIANCE WITH PRE-EXHAUSTION REQUIREMENTS**

99. Plaintiff and Class members adopt by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

100. Plaintiff has complied with all aspects of the pre-exhaustion requirements of the Prison Litigation Reform Act through the appropriate grievance processes of the NJDOC.

## FACTS SPECIFIC TO RAYMOND SKELTON

101. Skelton is a 69-year-old man who has been diagnosed with diabetes, high blood pressure, and high cholesterol. Diabetes is a disease that can lead to serious complications and potentially death.

102. Skelton has been incarcerated at South Woods State Prison in Bridgeton, New Jersey since April 2010.

103. Since Skelton's incarceration, he has been prescribed diabetic diet meals due to his medical problems.  Even though he has been prescribed diabetic meals, the meals that he has received are not adequate to sustain normal health.

104. South Woods State Prison is a state prison facility under the governance of the New Jersey Department of Corrections.

105. Defendants, since April 2010, have provided Skelton with insufficient and inadequate nutrition in his diabetic diet meals in violation of New Jersey Department of Corrections policy and in violation of standards set forth by the aforementioned federal agencies.

106. The diabetic meals provided to Skelton contain spoiled and rotten vegetables, fruits and meats.

107. The diabetic meals contain insufficient calories in violation of New Jersey Department of Corrections policy and federal agency standards.

108. Defendants, in a policy established by former Administrators and continued by current Administrator Defendants, deliberately eliminated required food from Skelton's diabetic meals.

109. Defendants, in accordance with the policy of former administrators, have therefore daily deprived Skelton of his medically required and prescribed diabetic meals and instead replaced them with food that is unfit for consumption.

110. The failure of Defendants to provide Skelton with diabetic meals has resulted in Skelton having a blood sugar level outside acceptable medical ranges.

111. Skelton has also suffered from several hypoglycemic episodes as a result of prison staff failing to provide him with diabetic meals.

112. Skelton has further suffered from hypoglycemic unawareness, chronic nausea, hypertension, constant weakness, nerve damage and other physical ailments as a result of Defendants' failure to provide him with adequate diabetic meals.

113. Skelton has exhausted all administrative remedies, grieves, and appeals prior to filing of this action.

## **CLASS ALLEGATIONS**

114. Plaintiffs bring this action on their own behalf and on behalf of all persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3). Plaintiffs seek certification of a class defined as follows:

> All inmates incarcerated in prisons under the direction of the NJDOC who were provided a diet which was inadequate to maintain normal health.  A further subclass is those inmates incarcerated in prisons under the direct supervision of the NJDOC who were not provided a diet commensurate with medically documented special needs.

115. Pursuant to Federal Rule of Civil Procedure 23(a), the members of the class are so numerous that joinder of all members is impractical. Plaintiffs do not know the exact number of class members. Plaintiffs are informed and believe, and thereupon allege that there are more than 12,000 persons in the class defined above.  The treatment to which Plaintiffs, and the class they represent, have and will be subjected—being deprived of a diet necessary to maintain normal health or being denied medically necessitated diets were all performed pursuant to policies, customs, and/or practices of Defendants.

116. Plaintiffs, on behalf of themselves and of the class of similarly situated persons, seek an order declaring that Defendants' treatment of Plaintiffs pursuant to these policies, customs, and/or practices is unlawful.

117. Pursuant to Federal Rule of Civil Procedure 23(a), Plaintiffs are informed and believe, and thereupon allege, that there are questions of law and fact common to the class, including but not limited to:

   a. Whether the statewide standardized diet as designed provides adequate nutrition to sustain normal health in violation of Plaintiffs' Eighth Amendment Rights.

   b. Whether Defendants provide dietary alternatives to prisoners with serious medical needs.

   c. Whether Defendants conspired to design and implement a diet which they knew were inadequate to meet the needs of the prisoners.

d. Whether Defendants routinely "short" meals for the prisoners.

e. Whether Defendants violated the Americans With Disabilities Act.

f. Whether Defendants violated the Rehabilitation Act.

g. Whether Defendants violated the New Jersey PDCRA.

h. Whether Defendants should be enjoined from continuing to use and implement a diet which is inadequate to maintain normal health and which does not meet the needs of prisoners with serious medical needs.

118. Pursuant to Federal Rules of Civil Procedure 23(a), Plaintiffs' claims are typical of the class they seek to represent. Plaintiffs and the class they seek to represent were all subjected to denial of a diet adequate to maintain normal health and the subclass was further denied a diet necessary for their documented medical needs. Plaintiffs have the same interests and have suffered the same type of injuries as the proposed class. Each proposed class member suffered actual damages as a result of the challenged conduct. Plaintiffs' claims arose because of Defendants' policies, customs, and/or practices. Plaintiffs' claims are based upon the same legal theories as the claims of the proposed class members.

119. Plaintiffs' counsel has the resources, experience, and expertise to successfully prosecute this action against Defendants. Counsel knows of no conflicts among any members of the class, or between counsel and any members of the class.

120. Pursuant to Federal Rules of Civil Procedure 23(b)(3), upon certification, class members must be furnished with the best notice practicable under the circumstances,

including individual notice to all members who can be identified through reasonable effort. If this action is certified as a class action, Plaintiffs contemplate that individual notice will be given to class members, at such last known address by first class mail, as well as notice by publication informing them of the following:

a.  The pendency of the class action and the issues common to the class;

b.  The nature of the action;

c.  Their right to "opt-out" of the action within a given time, in which event they will not be bound by a decision rendered in the class action;

d.  Their right to "opt-out" to be represented by their own counsel and to enter an appearance in the case; otherwise, they will be represented by the named class plaintiffs and their counsel; and

e.  Their right, if they do not "opt-out" to share in any recovery in favor of the class, and conversely to be bound by any judgment on the common issues adverse to the class.

## **EQUITABLE ALLEGATIONS**

121. Plaintiff and the Class adopts by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

122. In violation of State and Federal Constitutional and Statutory provisions, Defendants, and their agents and employees, have subjected, and unless enjoined, will continue to subject the Plaintiff and the class to a diet which is inadequate to meet the needs of normal health.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against All Defendants)

123. Plaintiff and the Class adopts by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

124. Under the Eighth Amendment to the United States Constitution, Plaintiff and the Class were entitled to a diet sufficient to sustain prisoners in good health.

125.  The diet as designed and prepared by Defendants does not meet the nutritional needs sufficient to sustain prisoners in good health.

126. An actual and justiciable controversy exists between Plaintiff and Defendants as to whether the diet as designed and prepared provided sufficient nutrition to sustain prisoners in good health and whether or not Defendants' actions and inactions described are lawful.

127. This claim for declaratory judgment is brought pursuant to 28 U.S.C. § 2201 *et seq.*, seeking a determination by the Court that: (a) this action may proceed and be maintained as a class action; (b) the diet as designed does not provide sufficient nutrition to sustain prisoners in good health; (c) the diet as prepared does not provide sufficient nutrition to sustain prisoners in good health; (d) the diet as designed and prepared does not provide inmates who are diabetic or pre-diabetic with proper nutrition to sustain good health and manage their diabetic condition; (e) Defendants

do not provide proper diets necessary for various medical conditions of inmates; (f) an award of reasonable attorneys' fees and costs of suit to Plaintiff and the Class is appropriate; and (g) such other and further relief as is necessary and just may be appropriate as well.

128. Plaintiff and the Class are interested parties because they were subject to actions and inactions described and, accordingly, seek a declaration of their rights concerning the legality of those actions and inactions to which they were subject.

129. As a direct and proximate result of Defendants' actions and inactions, Plaintiff and the Class suffered injuries entitling them to receive declaratory and injunctive relief against Defendants.

**SECOND CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**EIGHTH AMENDMENT – CRUEL AND UNUSUAL PUNISHMENT**
**(As to the Individual Defendants)**

130. Plaintiff and the Class adopt by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

131. The Eighth Amendment of the U.S. Constitution provides, in pertinent part, that cruel and unusual punishments not be inflicted.  As such, the Eighth Amendment requires that inmates be provided well-balanced meals containing sufficient nutritional value to preserve normal health.  The Eighth Amendment also requires that inmates with medical needs be provided a diet consistent with those medical needs.

132. Each of the Defendants was aware that inmates were entitled to a diet adequate to preserve normal health.

133. Each of the Defendants was aware that certain inmates had medical needs which required them to be provided with a diet appropriate for their medical needs.

134. Defendants decided collectively to not provide a diet to Plaintiff and members of the Class adequate to sustain normal health and not provide meals as medically required.

135. Even if the diet given to the Class and Subclass did not cause their underlying conditions, the failure to provide meals medically necessary caused additional injuries to the Class and the Subclass.  For example, not providing meals adequate for those members of the subclass with diabetes increases the complications of their underlying condition.

136. Defendants acted with deliberate indifference to the needs of Plaintiffs and members of the Class in not providing a diet adequate to sustain normal health or provide meals as medically required.

137. Defendants' actions denying Plaintiff and members of the class with a diet adequate to sustain normal health or to provide meals as medically necessary violated their constitutionally protected rights.

138. Defendants actions in a similar manner with respect to prisoner diets over a several year span constitutes a pattern of deliberate indifference to the prisoners with respect to prisoner diets.

139. As a direct and proximate result of Defendants' actions, Plaintiffs and members of the class suffered physical and emotional injury, humiliation, and other constitutionally protected rights and damages as described herein.

140. The actions of the Defendants violated the Provisions of 42 U.S.C. 1983 in that they knowingly and willfully violated the civil rights of the Plaintiff and Class members as described herein.

## THIRD CAUSE OF ACTION
### Training, Supervision, or Discipline
### Eighth Amendments to the U.S. Constitution; 42 U.S.C. § 1983
### (Against All Defendants)

141. Plaintiff and members of the Class adopt by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

142. Defendants acting under the color of law, maintain hiring, training, supervision, and/or discipline that permit or are in reckless disregard or deliberately indifferent to the violations of Plaintiffs' Eighth Amendment rights secured by the U.S. Constitution. Such hiring, training, supervision, and/or discipline was the moving force behind the violation of Plaintiff's and members of the Class's Eighth Amendment rights.

143. Prison workers who assisted in the kitchen were inadequately trained and supervised leading to defective manufacturing and preparation of the meals.  In turn, this further harmed Plaintiff and the Class because the meals did not contain the proper quantities of foodstuffs as specified in the design of the meals and were de facto not adequate to maintain normal health.

144. With respect to the individual defendants, each of them was aware that the diet being provided to the prisoners was inadequate to meet the needs of normal health and did

not take disciplinary action against those individuals and or companies which were violating prisoners Eighth Amendment rights.

145. The inadequacy of the hiring, training, supervision, and/or discipline and the need for adequate hiring, training, supervision, or discipline, is patently obvious and foreseeably likely to result in the violation of persons' Eighth Amendment rights secured by the U.S. Constitution. Specifically, the inadequacy of the hiring, training, supervision, and/or discipline lead to Plaintiff and members of the Class no receiving meals adequate to sustain normal health or to meet their serious medical needs.

146. Defendants' actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to Plaintiffs' and members of the Class's Eighth Amendment rights secured by the U.S. Constitution, or were wantonly or oppressively done.

147. As a direct and proximate result of Defendants' actions and inactions, Plaintiffs' and members of the Class' suffered injuries entitling them to receive compensatory damages and declaratory and injunctive relief against Defendants, and damages against the individual defendants.

148. WHEREFORE, Plaintiffs pray for relief as hereunder appears.

## FOURTH CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C § 1983- CONSPIRACY
### (Against All Defendants)

149. Plaintiffs and Class members adopt by reference each and every paragraph of this Complaint as if fully copied and set forth at length herein.

150. The individually named Defendants, acting in concert with each other, conspired to deny Plaintiff and the members of the class of their civil rights, specifically, their right to not be subject to cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution in the following non-exclusive ways: NJDOC employees conspired to alter the diet provided to Plaintiffs and Class members in such a way that the diet was not adequate to sustain normal health. This alteration was done with deliberate indifference to the needs of the prisoners in an attempt to minimize costs and maximize profits.

151. As a result of the concerted unlawful and malicious conspiracy of all of the Defendants, Plaintiff and members of the Class were denied their rights of equal protection of the laws and the due course of justice was impeded.

152. As a direct and proximate result of the unlawful and malicious conspiracy of the Defendants, the Plaintiff and members of the Class have suffered damages not only compensatory but punitive damages are appropriate to be awarded, all under 42 U.S.C. § 1983.

## FIFTH CAUSE OF ACTION
## DISCRIMINATION BASED UPON DISABILITY (TITLE II AND OR TITLE III OF ADA)
### (Against Individual Defendants in their Official Capacities)

153. Plaintiffs and Class members incorporate and restate each of the above paragraphs as if fully set forth herein.

154. Plaintiff and members of the subclass of those of have a serious medical need requiring diet modifications are "qualified individuals with a disability" as defined in 42 U.S.C. §12131(2).

155. The ADA and its implementing regulations require that alternative services and modifications be made to qualified individuals with a disability.

156. Plaintiff and members of the subclass have been denied by Defendants' dietary modifications required to manage their serious medical needs.

157. As a result of Defendants' denial of dietary alterations to Plaintiff and members of the subclass, Defendants violated the ADA by discriminating against Plaintiff in a number of ways, including without limitation, the following:

    a. By reason of Plaintiffs disabilities, age and need for long-term care services;

    b. Denial of long-term dietary alterations for medically needy prisoners violates the ADA as the Defendants cannot show that providing these services is a fundamental alteration of the program providing meals to prisoners.

    c. Denying Plaintiff and members of the subclass the equal/same opportunity to receive the meals adequate to maintain their normal health as other prisoners without serious medical needs violates the ADA. It is not a fundamental alteration of the long-term care of prisoners to accommodate the Plaintiff and subclass' request to

receive dietary alterations compatible with those serious medical needs.

158. While the prison diet as delivered to all inmates is inadequate as described above, those with serious medical needs are discriminated from other prisoners because the diet as provided leaves those with serious medical issues with even less food to meet their needs than normal prisoners.  Thus, the adverse effects of the diet are enhanced with respect to Skelton and the subclass with serious medical needs.

159. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff and members of the subclass have sustained injuries and damages.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF THE REHABILITATION ACT**
**(Against Individual Defendants in their Official Capacities)**

160. Plaintiffs and Class members incorporate and restate each of the above paragraphs as if fully set forth herein.

161. Plaintiff and members of the subclass are "disabled/handicapped" individuals as defined in 29 U.S.C. 705.

162. The Rehabilitation Act and its implementing regulations require that Defendants administer programs/activities in the most integrated setting appropriate to the needs of qualified handicapped/disabled persons. 28 C.F.R. § 41.51 and 45 C.F.R § 84.4.

163. Plaintiff and members of the subclass have been denied and excluded from the benefits of Defendants' meal program because Defendants have failed to make

alternative diets available which meet Plaintiff and the subclass' serious medical needs.

164. As a result of Defendants' denial and exclusion of Plaintiff and members of the subclass from receiving an alternative diet compatible with their serious medical needs violated the Rehabilitation Act by discriminating against them in a number of ways, including without limitation, the following:

a. By reason of Plaintiffs disabilities, age and need for long-term care services;

b. Denial of long-term dietary alterations for medically needy prisoners violates the ADA as the Defendants cannot show that providing these services is a fundamental alteration of the program providing meals to prisoners.

c. Denying Plaintiff and members of the subclass the equal/same opportunity to receive the meals adequate to maintain their normal health as other prisoners without serious medical needs violates the ADA. It is not a fundamental alteration of the long-term care of prisoners to accommodate the Plaintiff and subclass' request to receive dietary alterations compatible with those serious medical needs.

165. While the prison diet as delivered to all inmates is inadequate as described above, those with serious medical needs are discriminated from other prisoners because the diet as provided leaves those with serious medical issues with even less food to meet their needs than normal prisoners. Thus, the adverse effects of the diet are enhanced with respect to Skelton and the subclass with serious medical needs.

166. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff and members of the subclass have sustained injuries and damages.

### RELIEF REQUESTED

167. Wherefore the Plaintiff and the Class respectfully prays this Honorable Court will GRANT the following relief:

   a. Finding that this action satisfies the prerequisites for maintenance as a class action under Fed. R. Civ. 23(b)(2) and 23(b)(3), and applicable case law and certifying the Class and subclass defined herein;

   b. Designating Plaintiff as representative of the Class and their counsel as Class counsel;

   c. For declaratory and injunctive relief declaring that Defendants' actions unlawful, and enjoining preliminarily and permanently, Defendants' failing to provide prisoners with a diet sufficient to maintain normal health and from failing to provide prisoners with specialized diets based upon medical necessity.

   d. Order the NJDOC (through the Defendants) either through itself or through contracted food service providers, to provide meals that are constitutionally and medically sufficient for the health and well-being of the Class Members, containing all those foods and substances considered to be essential to human health and significantly reducing or removing those foods and substances understood to be harmful to human health.

e.  Order the NJDOC (through the Defendants) to make available in prisoner stores, fair-market priced, healthy food choices to include low-sodium, low-fat, high-fiber and low or no sugar-containing foods.

f.  Order the NJDOC (through the Defendants) to make available in its meal halls, healthy choice options for those with food allergies to common allergens such as rea, dairy, peanuts etc.

g.  Appoint a Monitor to ensure that the NJDOC and its contracted food service providers provide meals consistent with the nutritional standards abided by in federal government as these are the same standards accepted to be appropriate and proper for human health and well-being and that it serves these foods properly prepared and in sufficient quantities.

h.  Award the Plaintiff and Class Members compensatory, general, and special damages as appropriate and as permitted by law.

i.  Award the Plaintiff and Class Members punitive damages as appropriate and as permitted by law.

j.  Award the Plaintiff and Class Members costs, fees and expenses as appropriate.

k.  Grant the Plaintiff and Class Members injunctive relief as appropriate.

l.  Grant the Plaintiff and Class Members declaratory relief as appropriate.

m.  Enjoin the Defendants from engaging in any form of retaliation against the Plaintiff and Class Members for the filing of this litigation or for the bringing

of administrative complaints regarding any matters addressed in this litigation.

n.  Provide any other Relief this Court might deem fair, just, and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues stated in this action.


Date: December 15, 2022                     Respectfully Submitted,

                                            */s/ Keith Altman*
                                            Keith Altman, Esq. (*pro hac vice*)
                                            **LAW OFFICE OF KEITH ALTMAN**
                                            33228 West 12 Mile Road, Suite 375
                                            Farmington Hills, MI 48334
                                            Telephone: (248) 987-8929
                                            Email: keithaltman@kaltmanlaw.com

                                            */s/ Solomon M. Radner*
                                            Solomon M. Radner, Esq. (P73653)
                                            **LAW OFFICE OF KEITH ALTMAN**
                                            33228 West 12 Mile Road, Suite 375
                                            Farmington Hills, MI 48334
                                            Telephone: (248) 987-8929
                                            Email: solomonradner@kaltmanlaw.com

                                            *Attorneys for Plaintiff and the Class*


## **CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2022, I served the foregoing document upon all parties by filing this document on this court's CM/ECF electronic filing system which will send a true copy to all counsel of record.

                        */s/ Solomon M. Radner*
                        *Attorney for Plaintiff and the Class*