[Docket No. 85]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |
|---|---|
| RAYMOND SKELTON on behalf of himself and all similarly situated persons, <br><br> Plaintiff, <br><br> v. <br><br> JONATHAN BRANGANZA, *et al.*, <br><br> Defendants. | Civil No. 19-18597 (RMB-SAK) <br><br> **OPINION** |

**APPEARANCES**

Solomon M. Radner, Esq.
Keith Altman, Esq. (*pro hac vice*)
THE LAW OFFICE OF KEITH ALTMAN
33228 West 12 Mile Road, Suite 375
Farmington Hills, MI 48334

    *On behalf of Plaintiff*

Mathew J. Platkin
Attorney General of New Jersey

Daniel Shehata
Deputy Attorney General

NEW JERSEY OFFICE OF THE ATTORNEY GENERAL
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625-0112

    *On behalf of Defendants*

RENÉE MARIE BUMB, Chief United States District Judge

This matter comes before the Court upon the Second Motion to Dismiss the Third Amended Complaint filed by Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6). [Docket No. 85 ("Defs.' Br.").] Plaintiff Raymond Skelton ("**Plaintiff**") opposes the Motion. [Docket No. 87.] Defendants submitted a Reply in further support for their Motion to Dismiss on December 15, 2023. [Docket No. 89.] On February 20, 2024, the Court heard oral argument on Defendants' Second Motion to Dismiss.  [Docket No. 97.] For the reasons expressed herein, the Court **GRANTS**, **IN PART, and DENIES, IN PART,** Defendants' Second Motion to Dismiss.

## I.    FACTUAL BACKGROUND

This is a proposed class action lawsuit accusing the New Jersey Department of Corrections ("**NJDOC**") of failing to provide prisoners with an adequate diet sufficient to sustain normal health or to meet the serious medical needs of certain prisoners. [*See* Docket 75 ¶ 48, Third Amended Complaint ("**TAC**").] Plaintiff, a prisoner incarcerated at South Woods State Prison seeks injunctive, declaratory, and monetary relief against NJDOC Dieticians ("**Dietician Defendants**")[1] and their managers ("**Dietician Manager Defendants**") and Food Service Directors and their Managers ("**Food Service Defendants**") (collectively, "**Defendants**") for designing, preparing, and serving a diet to prisoners that Plaintiff alleges violates the Eighth Amendment of

---

[1] The Dietician Defendants are Patricia Esch who created the diet from 2016–21 and Alexandra Davanzio who designed the current diet. [TAC ¶¶ 29–30.]

2

the Constitution, the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("**ADA**") and Section 504 of the Rehabilitation Act of 1973, *as amended*, at 29 U.S.C. § 794 (the "**Rehabilitation Act**"). Plaintiff seeks to represent a class of "[a]ll inmates incarcerated in prisons under the direction of the NJDOC who were provided a diet which failed to meet the American Dietetic Association and United States Department of Agriculture ("**USDA**") standards in accordance with NJDOC policies." [TAC ¶ 3.] Additionally, Plaintiff proposes a subclass of inmates "who were not provided a diet commensurate with medically documented special needs." [*Id.*]

On the books, it is allegedly NJDOC's policy to serve prisoners a diet adhering to "qualifying dietary standards established by [USDA] and the Recommended Dietary Guidelines of Food and Nutrition Board, Institute of Medicine, National Academy of Science [and] National Research Council." [*Id.* ¶ 7.] That diet is supposed to feed prisoners "a variety of required foods" including proteins, fruits, and vegetables. [*See id.* ¶¶ 17–20, 51, 59, 61, 62, 67.]

Plaintiff alleges, however, that NJDOC's practice is apparently quite different off the books. At some point in 2010, Plaintiff alleges that Defendants conspired to design and serve a diet "inadequate to sustain normal health in accordance with the USDA's Dietary Guidelines" and have "fail[ed] to provide medically necessary diets to prisoners suffering from various medical conditions such as diabetes, heart disease, and food allergies." [TAC ¶¶ 68–70.] Plaintiff alleges that Defendants have "virtually eliminated" healthy options such as fruits and vegetables and unprocessed proteins

3

from the prison diet. [*Id.* ¶¶ 18–20, 60, 64.] Instead, NJDOC now serves a diet that is allegedly deficient in a variety of essential vitamins, minerals, and nutrients which prisoners cannot get through the empty starches, potatoes, highly processed meats, fake cheese products, cookies, cakes, and desserts that NJDOC serves instead. [*Id.* ¶¶ 55–64.] Additionally, Plaintiff alleges that the Food Service Defendants regularly "short" the diet, that is, water down foods or load meal products with bread scraps and "fillers." [*Id.* ¶ 75.] To maintain appearances that the diet is proper, Plaintiff alleges that the Food Service Defendants prepare false menus which, on their face, appear to advertise a healthy diet but, in reality, do not accurately represent the unhealthy meal products actually served to prisoners. [*Id.* ¶¶ 80, 88.]

Plaintiff alleges that the diet has caused significant health consequences and exacerbated pre-existing health problems for himself and other prisoners. Plaintiff (who himself suffers from diabetes, high blood pressure and high cholesterol) alleges that there has been an "explosion in diabetes among the prison population as well as the significant progression of those with diabetes when entering the prison system" caused by the prison diet. [*Id.* ¶ 91.] Plaintiff additionally notes increases in cancer, high blood pressure, heart disease, obesity, and mental disorders which he also attributes to the diet. [*Id.* ¶ 92.]

## II.    PROCEDURAL BACKGROUND

Plaintiff filed this action in October 2019. [Docket No. 1.] Defendants—which consisted of NJDOC, the NJDOC Acting Commissioner, Marcus Hicks, South Woods State Prison Administrator, John Powell, and the Dietician Defendants,

Dietician Manager Defendants and Food Service Defendants, all named as John Does—moved to dismiss. [Docket No. 14.] The Court granted the motion to dismiss. As to NJDOC, the Court found Plaintiff's claimed barred by Eleventh Amendment immunity since NJDOC is a state agency. [*See* Docket No. 21 at 12 ("Op.") (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 (1984)).] As to Defendants Hicks and Powell, the Court found that Plaintiff failed to state a claim for relief under the Eighth Amendment, ADA or Rehabilitation Act. The Court held that although the failure to provide prisoners with a nutritionally adequate diet could be an objectively serious violation of the Eighth Amendment, Plaintiff had not sufficiently alleged deliberate indifference on the part of Hicks and Powell because there were no facts alleging any personal involvement by Hicks and Powell in designing, preparing, or serving the allegedly unlawful diet. [Op. at 17–24.] The Court also dismissed the supervisory liability claims against Hicks and Powell because the alleged practices of shorting food, substituting non-nutritional food, and serving rotten food were not practices so well known to pose a substantial risk to inmate health that it was obvious to prison officials that training and supervision must be deficient. [Op. at 25.][2] As to the ADA and Rehabilitation Act claims, the Court also dismissed the claims as to Hicks and Powell because Plaintiff failed to allege that his diabetes substantially limits a major life activity. [Op. at 29–33.] The Court permitted Plaintiff to file an amended complaint within 45 days. [Docket No. 22.]

_____

[2] The Court also dismissed Plaintiff's Section 1983 conspiracy claim because Plaintiff failed to state an underlying Eighth Amendment violation. [Op. at 28–29.]

After nearly eight months of inactivity, the Court directed Plaintiff to show cause as to why the case should not be dismissed for failure to prosecute. [Docket No. 23.] Counsel for Plaintiffs responded, and the Court directed Plaintiff to file an amended complaint within 30 days. [Docket No. 27.] Plaintiff did so, but continued to name the Dietician, Dietician Manager, and Food Service Defendants as John and Jane Does. [Docket No. 33.] On June 14, 2022, after Plaintiff failed to take any action to identify the Doe Defendants and amend the complaint, this Court filed a Notice of Call for Dismissal pursuant to Federal Rule of Civil Procedure 4(m), explaining that Plaintiff must identify the unnamed defendants prior to filing and serving a second amended complaint. [Docket No. 34.] On June 24, 2022, Plaintiff filed a response to the Notice of Call for Dismissal. [Docket No. 35.] The Court vacated the Notice of Call for Dismissal and directed Plaintiff to immediately take steps to identify the Doe Defendants. [Docket No. 37.]

Plaintiff filed his Second Amended Complaint on December 15, 2022 naming the Dietician and Food Service Defendants as well as various NJDOC commissioners. [Docket No. 44 ¶¶ 26–47.] The Court held a pre-motion conference on Defendants' proposed motion to dismiss the Second Amended Complaint pursuant to its Individual Rules and Practices. At the pre-motion conference, the Court noted its concerns over the broad-brush allegations made against a kitchen sink of defendants and directed Plaintiff to amend the complaint once more.

Plaintiff filed the operative Third Amended Complaint on August 4, 2023. The Third Amended Complaint dropped the NJDOC commissioner defendants named in

the Second Amended Complaint and only named the Dietician Defendants, the Dietician Manager Defendants, and Food Service Defendants in their individual and official capacities. All are charged with violations of (i) the Eighth Amendment, including a conspiracy to violate the Eighth Amendment and a failure to train, supervise, or discipline related to violations of the Eighth Amendment; (ii) the ADA; and (iii) the Rehabilitation Act. Plaintiff seeks monetary damages as well as declaratory and injunctive relief declaring that Defendants' actions unlawful and enjoining Defendants' alleged failure to provide prisoners with a diet sufficient to maintain normal health. Defendants have again moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## III.   LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (*first citing Conley v. Gibson*, 355 U.S. 41, 47 (1957); *then citing Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); *and then citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original). Further, "to determine the sufficiency of a complaint," the Court must follow a three-step process:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009) (alterations in original)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*."). Thus, "[a] motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Malleus*, 641 F.3d at 563 (*quoting Twombly*, 550 U.S. at 570).

## IV.   ANALYSIS

### A.   Eighth Amendment Claims

Plaintiff, on behalf of a putative class of NJDOC prisoners, alleges that Defendants violated the Eighth Amendment by failing to provide him with a nutritionally adequate diet, and by failing to provide him and a proposed subclass of prisoners with serious medical needs such as diabetes with a diet adequate for his serious medical needs. As the Court previously explained, there are two distinct Eighth Amendment analyses applicable to these claims, the first involves a failure to protect an inmate's health, and the second involves adequacy of treatment for a prisoner's serious medical needs. [*See* Op. at 15.]

### 1.   *Failure to Protect Inmate Health*

The Eighth Amendment prohibits the infliction of cruel and unusual punishment by the government. U.S. CONST. AMEND. VIII. To successfully plead an Eighth Amendment claim based on conditions of confinement, a prisoner must allege facts that meet both an objective and a subjective standard. First, under the objective standard, a prisoner-plaintiff must show that prison conditions resulted in an "extreme" deprivation of "the minimal civilized measure of life's necessities" such as "adequate food, clothing, shelter, [or] medical care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Second, under the subjective prong, a prisoner-plaintiff must show that the defendant prison officials acted with deliberate indifference, meaning that "the official kn[ew] of and disregard[ed] an

excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability … even if the harm ultimately was not averted." *Id.* at 844. But their response to that substantial risk must be reasonable. *Id.*

### a.   *Objective Violation of the Eighth Amendment*

Under the Eighth Amendment, prisoners are entitled to "the minimal civilized measure of life's necessities," which, in the context of providing "adequate food," courts have defined as "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Ramos v. Lamm*, 639 F.2d 559, 570–71 (10th Cir. 1980) (citations omitted); *accord Preacher v. Overmyer*, 2023 WL 3562982 at 2 (3d Cir. 2023); *Laufgas v. Speziale,* 263 F.App'x 192, 198 (3d Cir. 2008) (same); *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996) *per curiam* ("To comply with the Constitution, inmates must receive "reasonably adequate food."). "In determining when prison conditions pass beyond legitimate punishment and become cruel and unusual, the touchstone is the effect upon the imprisoned." *Rhodes v. Chapman*, 452 U.S. 337, 364 (1981) (references omitted).

This standard, then, begs the question—what exactly is a "nutritionally adequate diet"? To be sure, there are some easy cases. On one end of the spectrum, a prison diet that lacks variety or is simply unappetizing does not violate the Eighth Amendment's objective prong. *See Burgin v. Nix*, 899 F.2d 733, 734–35 (8th Cir. 1990)

10

(inmates do not have a constitutional right to be served any particular type of food); *see also Hunter v. Passaic Cnty. Jail*, 2018 WL 5980447, at *3 (D.N.J. Nov. 14, 2018). On the other end, "a prison that deprives prisoners of basic sustenance, . . . is incompatible with the concept of human dignity and has no place in civilized society." *Brown v. Plata*, 563 U.S. 493, 511 (2011).

A good portion of Plaintiff's Third Amended Complaint seems to allege a theory that Defendants violated the Eighth Amendment's objective prong by designing, preparing, and serving a diet "which is inadequate to sustain normal health in accordance with the USDA's Dietary Guidelines." [TAC ¶¶ 68, 121, 134, 155, 165.] In other words, Plaintiff alleges the prison diet violates the Eighth Amendment because it fails to meet USDA guidelines. This ignores the touchstone of the Eighth Amendment that requires consideration of the effect the alleged deprivation had on the prisoner. It is not plausible that a diet, because it is not in accordance with USDA guidelines, without more, caused prisoners to develop diabetes, heart disease or cancer.   Courts have thus consistently refused to equate a failure to meet national nutritional guidelines with an objective violation of the Eighth Amendment. *See Florer v. Bales-Johnson*, 752 F. Supp. 2d 1185, 1200 (W.D. Wash. 2010), *aff'd*, 473 F. App'x 651 (9th Cir. 2012) ("USDA guidelines and recommendations are not constitutional requirements."); *Gonsalves v. DeVeau*, 2012 WL 6104788, at *2 (D. Conn. Dec. 7, 2012) ("The Constitution does not, however, require adherence to any particular nutritional guidelines."); *Ingram v. Atl. Cnty. Just. Fac.*, 2011 WL 3684806, at *5 (D.N.J. Aug. 23, 2011) (dismissing complaint where Plaintiff alleged that diet did not satisfy the

recommended daily allowance of the National Academy of Sciences). Insofar as Plaintiff's Third Amended Complaint is predicated on Defendants' failure to adhere to nutritional guidelines, that Eighth Amendment claim is dismissed. Courts cannot become nutritionists and wade into the business of determining whether a prison diet contains too little Vitamin B1, co-enzyme Q10, proanthocyanidins, conjugated linoleic acid, N-acetyl cysteine, or selenium, some of the many vitamins, minerals, chemicals, and nutrients Plaintiff alleges that the diet lacks. [TAC ¶¶ 56–58.] The relevant question is whether the prison diet meets an objective—relatively low—constitutional floor, not whether it meets an aspirational ceiling imposed by a body like the USDA.

In light of the appropriate constitutional standard, taking the allegations as true and construing them in the light most favorable to Plaintiff, the Third Amended Complaint does barely enough to allege that the food provided to prisoners was not nutritionally adequate to sustain normal health. Plaintiff alleges that the diet consists entirely or almost entirely of empty starches, highly processed meats, and foods high in fat and sugar for over a decade with "virtually" no fruits, vegetables, or real protein offered. [TAC ¶¶ 17–20, 23, 60–64; *Rust v. Grammer*, 858 F.2d 411, 414 (8th Cir. 1988) (diet without fruits and vegetables might violate Eighth Amendment if it were the regular prison diet).] The allegations are more than simply that the food served to prisoners is unappetizing, cold, or bland. *Briggs v. Heidlebaugh*, 1997 WL 318081, at *3 (E.D. Pa. May 20, 1997) ("An unappetizing diet ... does not support a constitutional claim."). Plaintiff has alleged serious medical consequences caused by the regular diet,

including an "explosion in diabetes among the prison population" and "increases in cancer, high blood pressure, heart disease, obesity and mental disorders." [TAC ¶¶ 91–92 (describing effects of the diet on prisoner population); *id.* ¶¶ 97–108 (describing effects of the diet on Plaintiff specifically); *compare also Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (affirming dismissal of claim based on inadequate nutrition where the plaintiff failed to allege that his health suffered).]

Not all allegations of objective Eighth Amendment violations pleaded in the Third Amended Complaint are sufficient, however. Plaintiff's allegations of the Food Service Defendants "shorting" the diet by diluting foods with water or loading meal products with bread scrap fillers and preparing false menus are insufficient. Courts in this District have recognized as much. *See Simmons v. Kelsey*, 2020 WL 5793568, at *2 (D.N.J. Sept. 28, 2020) (allegations that Defendant "water[ed] down" food was not an objective violation of Fourteenth Amendment); *Hunter v. Passaic Cty. Jail*, 2018 WL 5980447, at *4 (D.N.J. Nov. 14, 2018) (plaintiff failed to show under Fourteenth Amendment that a "false menu" violated his right to adequate nutrition). Plaintiff fails to sufficiently allege these practices caused injury to his health. Because the allegations of shorting and creating false menus are the only allegations in the Third Amended Complaint specifically brought against the Food Service Defendants, after multiple opportunities to amend, they will be dismissed from this case.

The Court is highly skeptical that discovery will bear out Plaintiff's somewhat conclusory allegations of widespread medical harm caused by the diet. [*See, e.g.*, TAC ¶¶ 9, 16, 122, 130, 134.] But even before Plaintiff has an opportunity to discover what

the effects of the diet have been, he will have to show that the diet served is the diet alleged. Plaintiff alleges that the diet served consists almost entirely of processed meats, carbs, and desserts. If during discovery Defendants produce evidence that the diet, consistent with NJDOC internal policy, follows USDA guidelines or offers minimally sufficient balance of fruits, vegetables, and protein, then there is no objective violation of the Eighth Amendment or, at the very least, Defendants would be entitled to qualified immunity. [*See infra* at IV.A.1.c.]

**b.**   *Subjective Violation of the Eighth Amendment*

To meet the subjective component of the Eighth Amendment, Plaintiff must show that Defendants acted with deliberate indifference in designing, maintaining, and serving the allegedly unconstitutional diet. A prison official is deliberately indifferent if he recklessly disregards an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837; *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (defining deliberate indifference as a "subjective standard of liability consistent with recklessness as that term is defined by criminal law"). Deliberate indifference under the subjective prong of the Eighth Amendment requires a showing of personal involvement, usually through allegations of actual knowledge or acquiescence made with appropriate particularity. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). But it can also be established through circumstantial evidence. *Farmer*, 511 U.S. at 837.

Defendants argue that the allegations of deliberate indifference in the Third Amended Complaint are insufficient to put them on notice of the claims against them.

14

[Defs.' Br. at 13–14.] More specifically, Defendants argue that Plaintiff has improperly made broad and conclusory "group pleading" allegations "against unspecified Food Managers, Directors, [and] Dietitians" and thus, has failed to allege that Defendants had a sufficiently culpable state of mind to give rise to an Eighth Amendment claim. [*Id.*]

"Courts in this district generally agree that … 'group pleading' does not satisfy [Federal Rule of Civil Procedure] 8, because it does not place Defendants on notice of the claims against each of them." *Sheeran v. Blyth Shipholding S.A.*, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015) (Simandle, J.); *Ingris v. Borough of Caldwell*, 2015 WL 3613499, at *5 (D.N.J. June 9, 2015) ("[T]o the extent Plaintiff seeks to lump several defendants together without setting forth what each particular defendant is alleged to have done, he has engaged in impermissibly vague group pleading."). "Even under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants." *Shaw v. Housing Auth. of Camden*, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012).

The Third Amended Complaint barely distinguishes between the acts of the Dietician Defendants and the now-dismissed Food Service Defendants, routinely lumping both groups together. The Court, however, finds the allegations sufficient to at least put the Dietician Defendants on notice of the claims against them. *H2O Plus, LLC v. Arch Personal Care Prods., L.P.*, 2011 WL 2038775, at *2 (D.N.J. May 22, 2011) (holding that complaint did not violate Rule 8 because while plaintiff "did lump the []

15

Defendants together in the description of facts, looking to the Complaint … shows which claims are made against [each group of Defendants]").[3]

Plaintiff's theory of deliberate indifference as to the Dietician Defendants seems to go like this: the food served throughout NJDOC appears to be objectively unhealthy—the diet mostly consists of starches, sweets, and processed proteins with virtually no fruits, vegetables, or real protein. [TAC ¶ 23.] That food has caused or exacerbated health problems including diabetes, heart disease, and high blood pressure. [*Id.* ¶ 24.] The Dietician Defendants are the individuals who decide what food the prisoners eat, which must be adequate to sustain normal health. [*Id.* ¶¶ 27–30.] As dieticians, they were "commissioned to use their knowledge, training, and expertise to design an adequate diet" and "knew or should have known that the diet created failed to provide adequate nutrition which would result in injury to Plaintiff…." [TAC ¶ 131.] In other words, the obviousness of serving an objectively unhealthy diet to prisoners is sufficient to put the Dietician Defendants on notice of the risk. *See Farmer*, 511 U.S. at 842–43 (explaining that knowledge of a substantial risk of harm may be proved through obviousness of the risk). The Court finds this circumstantial evidence of deliberate indifference sufficient at this stage. If Plaintiff's

---

[3] The Court finds that Plaintiff's Third Amended Complaint only makes allegations of supervisory liability against the Dietician Manager Defendants rather than a free-standing Eighth Amendment claim against them. That supervisory liability claim (Count III) is addressed *infra* at § IV.A.3. Even if he did, however, that claim would fail as the Third Amended Complaint is devoid of any allegations that the Dietician Manager Defendants, with deliberate indifference, for example, approved the diet knowing that it was constitutionally insufficient and would cause harm.

allegations are true, which the Court must assume at this stage, then the Dietician Defendants designed a diet that they knew would result in diabetes and other health conditions manifesting in NJDOC prisoners over the course of many years.

### c.   *Qualified Immunity*

Qualified immunity "shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known*." Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006). Because qualified immunity bestows immunity from suit, the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). To determine whether an officer is entitled to qualified immunity from suit, courts ask two questions: "(1) whether the officer violated a constitutional right," and "(2) whether the right was clearly established, such that it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 201–02, (2001) (internal quotations and brackets omitted)).

The Court will not reach the issue of qualified immunity absent further factual development. *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (cautioning that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases"). Limited discovery is required to determine the contents of the prison diet. If the contents of the prison diet are what Plaintiff alleges, then, as the Court explained,

that is an objectively serious violation of the Eighth Amendment because feeding prisoners a diet almost entirely consisting of cakes and carbs for over a decade is plainly not nutritionally adequate. But if the prison diet, for example, follows USDA guidelines according to NJDOC's own internal dietary policy, there is no constitutional violation at all because aspirational standards for a healthy diet are clearly more than what the Eighth Amendment requires. If the diet does not follow USDA guidelines but is not so obviously deficient that a reasonable dietician would have known it would cause harm to inmates' health, then qualified immunity applies.[4] To put it more simply, the Court can easily determine whether the diet is well above or well below the Eighth Amendment constitutional floor, but determining whether the diet is just above, just below, or equivalent to the Eighth Amendment constitutional floor involves swimming in murky water. It is in that murky water where qualified immunity will most certainly apply.

**2.    *Deliberate Indifference to a Serious Medical Need***

Plaintiff alleges a second type of Eighth Amendment violation on behalf of the putative class—that he was prescribed a special diet to treat his diabetes and Defendants failed to provide the diet as prescribed. The analysis for such a claim diverges from that of an Eighth Amendment failure to protect inmate health. "[D]eliberate indifference to serious medical needs of prisoners constitutes the

---

[4] To be clear, the qualified immunity issue in this case turns solely on issues of fact. Plaintiff will have to show that the diet served in fact violates clearly established law that prison diets must be nutritionally adequate. *See Laufgas,* 263 F.App'x at 198 (citing *Ramos*, 639 F.2d at 571); *Eason*, 73 F.3d at 1327.

unnecessary and wanton infliction of pain … proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation omitted). This includes intentional interference with prescribed treatment. *Id*. Failing to provide prisoners with a medically prescribed diet can constitute cruel and unusual punishment if undertaken with deliberate indifference. *See Rush v. Fischer*, 923 F. Supp. 2d 545, 555 (S.D.N.Y. 2013), *aff'd sub nom. Rush v. Canfield*, 649 F. App'x 70 (2d Cir. 2016) (holding that "continued failure to provide a diabetic inmate with a medically appropriate diet, resulting in a decline in his health" is constitutionally impermissible).

Plaintiff alleges that prisoners, like himself, with serious medical needs such as diabetes, "are not provided with required meals and nutrition" despite being "prescribed diabetic meals." [TAC ¶¶ 48, 97, 98.] He alleges that there are "virtually" no low-sodium options for those with high blood pressure. [TAC ¶ 54.] Prisoners who have dairy allergies are not provided alternatives to milk. [TAC ¶ 62.] Healthy foods are provided in miniscule portions, and the majority of the diet comes from empty starches, and low or no-protein processed meats. [TAC ¶¶ 59–65.] No alternative food options are offered. [TAC ¶ 66.] As a result of the prison diet, Plaintiff has suffered from unacceptable blood sugar levels, hypoglycemic episodes, and other physical ailments. [TAC ¶ 105-07.] It is plausible that the Dietician Defendants were aware that the diets they designed, as alleged in the TAC, did not comply with medically prescribed diets for prisoners with diabetes and other conditions. Plaintiff's claims of

deliberate indifference to a serious medical need can proceed against the Dietician Defendants.[5]

Plaintiff, however, has not alleged sufficient facts that the Food Service Defendants knew that by "shorting" the menu, watering down foods or loading meal products with fillers, they were not providing Plaintiff and others similarly situated with their medically prescribed diets.

### 3.    *Failure to Train or Supervise*

Plaintiff also asserts a supervisory liability claim alleging that the Dietician Manager Defendants and the managers of the Food Service Defendants were aware that the diet being provided to the prisoners was inadequate to meet the needs of normal health and did not take disciplinary action. [TAC ¶ 145.] The only supervisor-level defendants relevant here are the Dietician Manager Defendants, Jonathan Branganza and James Frank. [*See id.* ¶¶ 27–28.][6]

There are two primary ways in which a supervisor may be liable for unconstitutional acts undertaken by subordinates. *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *judgment rev'd sub nom. on other grounds Taylor v. Barkes*,

---

[5] It can not proceed, however, against the Dietician Manager Defendants or the Food Service Defendants. It is the *design* of the diet that allegedly does not comply medically prescribed diets. [TAC ¶ 5.] Plaintiff does not allege that the diet, for example, is designed to include medically prescribed meals but that the Food Service Defendants refuse to prepare those medically prescribed meals. And again, the only allegations that seem to be made against the Dietician Manager Defendants are for supervisory liability of the Dietician Defendants.

[6] The manager-level Food Service Defendants cannot be liable as supervisors because, as the Court explained above, Plaintiff fails to state an Eighth Amendment claim against the Food Service Defendants. *See supra* at 13.

575 U.S. 822 (2015). First, a Plaintiff may show that a supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.,* 372 F.3d 572, 586 (3d Cir.2004)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes*, 766 F.3d at 316 (citations and quotation marks omitted).

Plaintiff cannot point to a policy, practice, or custom which caused a constitutional harm. In fact, NJDOC's on-the-books dietary policy is constitutionally sufficient. [TAC ¶ 67 ("Per NJDOC policy, the meals provided to inmates are to [] contain a variety of required foods that meet the American Dietetic Association and United States Department of Agriculture (USDA) standards.").] Plaintiff has failed to allege how the Dietician Manager Defendants had knowledge of and acquiesced to the Dietician Defendants designing a diet that is allegedly inadequate to sustain normal health. Plaintiff's sole allegation is that the Dietician Manager Defendants managed the Dietician Defendants. [TAC ¶¶ 27–28.] There are no allegations that the Dietician Manager Defendants approved the diet knowing that it was constitutionally insufficient and would cause harm. Thus, Plaintiff's supervisory liability claim is dismissed.

**4.**     ***Eighth Amendment Conspiracy***

Finally, the Court dismisses Plaintiff's Eighth Amendment conspiracy claim brought under 42 U.S.C. § 1983. The elements of a claim of conspiracy to violate federal civil rights are that "(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs ... any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States," with the added gloss under § 1983 that "the conspirators act 'under the color of state law.'" *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (quoting *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)). The Third Circuit in *Jutrowski* further explained that:

> After a plaintiff establishes that the object of the conspiracy was the deprivation of a federally protected right, "the rule is clear that" the plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184–85 (3d Cir. 2009) (citing *Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990)). To show agreement, he must demonstrate that "the state actors named as defendants in the[ ] complaint somehow reached an understanding to deny [the plaintiff] his rights," *Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993), and in the absence of direct proof, that "meeting of the minds" or "understanding or agreement to conspire" can be "infer[red]" from circumstantial evidence, *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008). Such circumstantial evidence may include that the alleged conspirators "did or said something ... to create an understanding," "the approximate time when the agreement was made, the specific parties to the agreement[,] the period of the conspiracy, or the object of the conspiracy." *Great W. Mining*, 615 F.3d at 178–79 (citations omitted).

904 F.3d at 295.

Plaintiff's conspiracy claim is hopelessly conclusory. Plaintiff alleges only that Defendants conspired to "deny Plaintiff and the members of the class … their right to

not be subject to cruel and unusual punishment in violation of the Eighth Amendment" and to "alter the diet provided to Plaintiffs and Class members in such a way that the diet was not adequate to sustain normal health." [TAC ¶ 152.] Plaintiff does not allege any factual basis to support the existence of an agreement and concerted action other than his say-so. The claim will be dismissed.

### B.   ADA and Rehabilitation Act Claims

Plaintiff fails to allege a violation of the ADA or Rehabilitation Act because he does not sufficiently allege that his diabetes or any of his other medical conditions substantially limit a major life activity. *See Johnson v. Amtrak*, 390 F. App'x 109, 113 (3d Cir. 2010). He (again) alleges that failure of Defendants to provide him with adequate diabetic meals has resulted in him having a blood sugar level outside acceptable medical ranges; that he has suffered from hypoglycemic episodes as a result of prison staff failing to provide him with diabetic meals; and has further suffered from hypoglycemic unawareness, chronic nausea, hypertension, constant weakness, nerve damage and other physical ailments as a result of Defendants' failure to provide him with adequate diabetic meals. [*See* TAC ¶¶ 97–108.]

That is not good enough. Plaintiff must "recit[e] activities found in the [ADA] that [he] could not perform "adequately." *Dancause v. Mount Morris Cent. Sch. Dist.*, 590 F. App'x 27, 28 (2d Cir. 2014); *Amaker v. Annucci*, 2016 WL 5720798, at *7 n.10 (S.D.N.Y. Sept. 30, 2016), *aff'd*, 721 F. App'x 82 (2d Cir. 2018) (plaintiff failed to adequately allege that she suffered from a disability under the ADA because she failed to plead facts tending to show that her diabetes substantially limited a major life

activity). Plaintiff merely alleges that he has certain medical conditions and that he has relevant symptoms associated with those diseases. *Montalvo v. Lamy,* 139 F. Supp. 3d 597, 611 (W.D.N.Y. 2015) ("Numerous federal courts have held that diabetes, even when accompanied by the use of medication and dietary restrictions, is not necessarily a disability under the ADA."). The ADA and Rehabilitation Act claims are dismissed.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS, IN PART and DENIES, IN PART,** Defendants' Motion to Dismiss the Third Amended Complaint. The Court **DISMISSES** the Dietician Manager Defendants and Food Service Defendants from this case as to each count. It additionally **DISMISSES**, in total, Plaintiff's claims for supervisory liability (Count III), conspiracy liability (Count IV), ADA liability (Count V) and Rehabilitation Act liability (Count VI). All dismissals are **WITH PREJUDICE** considering the many opportunities the Court has provided to Plaintiff to establish his case over the course of four years. Defendants' Motion to Dismiss is otherwise **DENIED**. An accompanying Order shall issue.

**March 4, 2024**　　　　
Date

　　　　　　　　　　　　**Renée Marie Bumb**　　　　　　
　　　　　　　　　　　　RENÉE MARIE BUMB
　　　　　　　　　　　　Chief United States District Judge

24